MICHAEL E. KIRBY, Judge.
|,Andrea Padilla appeals a Civil District Court judgment of July 17, 2006 that denied her motion for summary judgment and granted the motion for summary judgment filed by the intervenors, Ronald and Lynda Burger (“the Burgers”). The judgment dismissed Padilla’s suit to quiet tax title, declared null the tax sale of the property in dispute, and cancelled Padilla’s tax sale deed upon the Burgers’ paying her the lawful redemption amount. In this Court, Padilla has filed peremptory exceptions of prescription, no cause of action and no right of action to the Burgers’ petition of intervention.
FACTS AND PROCEDRUAL HISTORY
By Act of Credit Sale dated August 1, 1996, the Burgers sold Louis Schwartz certain property bearing the municipal address 11112 Haynes Blvd., New Orleans, LA (“the property”). The vendor-financed instrument was filed and duly registered in the conveyance records of Orleans Parish, and clearly states that the Burgers held a mortgage and vendor’s privilege against the property.
|2On July 19, 2001, the property was declared blighted and a public nuisance by an administrative hearing officer for the City of New Orleans in a case captioned “The City of New Orleans v. Louis Schwartz, 11112 Hayne Blvd., New Orleans, LA 70128.” The notice of Judgment with respect to that adjudication reveals that a fine and costs were assessed against Schwartz. It also states that because the property was found to be blighted and a public nuisance it was eligible for expropriation by the New Orleans Redevelopment Authority; eligible for demolition; and, that failure to pay the assessed fine and costs would result in a lien being placed against the property. The notice further states that “[fjailure to pay the lien along with your next ad valorem tax bill may result in this property being sold in accordance with laws that govern tax sales of immovable property.” [1]
Following an auction on November 14, 2001, the Collector of Ad Valorem Taxes for the city of New Orleans executed a tax deed on June 4, 2002 in favor of Padilla, transferring all of Schwartz’s right, title and interest in the property for non-payment of property taxes for the years 1997, 1998,1999 and 2000. This tax deed specifically states that the owner, Schwartz, could redeem the property at any time within three years of the filing of the deed in the conveyance records of Orleans Parish. The deed was filed on June 5, 2002.
On February 13, 2004, Padilla filed a Petition to Quiet Tax Title pursuant to La. R.S. 47:2228[2], which formerly provided *9 that once three (3) years had elapsed |sthe purchaser of property at a tax sale could file suit to quiet title. The trial court appointed a curator ad hoc to represent Schwartz based upon Padilla’s allegation that Schwartz was last known to be a resident of New Orleans but his then current residence was unknown.
In May 2004, the Burgers discovered that the property had been sold at the tax sale and made a redemption request to Padilla for an accounting of the amounts owed to her. Padilla refused to provide the accounting. On July 28, 2004, the Burgers intervened in the suit to quiet tax title, naming as defendants Padilla, the City of New Orleans and Schwartz, through his curator ad hoc, to assert their claims as recorded mortgage holders on the property at issue.
On May 17, 2005, Padilla filed a motion for summary judgment, alleging that because the property had been adjudicated blighted, an eighteen month redemption period applied pursuant to La. Const. Art. VII, § 25(B)(2). Thus, Padilla contends, the Burgers had eighteen months from June 5, 2002 to timely redeem the property, but failed to so.
On November 21, 2005, the Burgers filed a motion for summary judgment based upon a violation of their due process rights as mortgage holders to receive notice of the proposed tax sale. They claimed the violation of their due process rights made the tax sale an absolute nullity. On May 25, 2006, the trial court heard the motions and determined that it first had to ascertain whether the city of New Orleans had provided notice of the pending tax sale in compliance with constitutional due process requirements. The trial court ordered the city to produce 14any and all information concerning notices. At a subsequent hearing, the city failed to present any evidence that the Burgers or Schwarz had received notice of the pending tax sale. The trial court then dismissed Padilla’s Petition to Quiet Title, rendered the tax sale an absolute nullity, and ordered that the tax sale deed be canceled upon payment of the lawful redemption amount.
ASSIGNMENTS OF ERROR
In addition to the peremptory exceptions noted above, Padilla appeals the trial court judgment, raising four (4) assignments of error: 1) trial court erred in denying her motion for summary judgment; 2) trial court erred in hearing the Burgers’ motion; 3) trial court erred in granting their motion; and, 4) trial court erred in entering a final judgment annulling the tax sale without entering a money judgment awarding her the amounts owed if the tax sale was nullified.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Costello v. Hardy, 2003-1146, p. 8 (La.1/21/04), 864 So.2d 129, 137; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991). A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary | .Judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Samaha v. Rau, 2007-1726, p. 4 (La.2/26/08), 977 So.2d 880, 883. La. C.C.P. art. 966(C) provides:
(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is *10 entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Therefore, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
(Emphasis added). Samaha, 2007-1726 at p. 5, 977 So.2d at 883.
DISCUSSION
On appeal, Padilla argues the issue is not whether the Burgers’ due process rights to notice were violated but whether that issue was even before the trial court. Padilla reasons that the Burgers’ intervention was premised on a single issue, i.e., whether the three year redemption period of La. Const. Art. VII, § 25(B)(1) had accrued. Padilla contends that the proper redemptive period is eighteen months under Art. VII, § 25(B)(2), because the property had been declared blighted on August 3, 2001, and, therefore, the Burgers failed to timely exercise any rights they may have had to redeem the property. The Burgers, on the other hand, argue that | (ithe tax sale was absolutely null as a result of the violation of their due process right to receive notice. Since the sale was an absolute nullity, they contend the redemption periods established by La. Const. Art. VII, § 25(B) never commenced to run.
First we will address the procedural arguments, and then the substantive issues.
Louisiana Const. Art. VII, § 25(B), provides:
* * *
(B) Redemption. (1) The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.
(2) In the city of New Orleans, when such property sold is residential or commercial property which is abandoned propei'ty as defined by R.S. 33:4720.12(1) or blighted property as defined by Act 155 of the 1984 Regular Session, it shall be redeemable for eighteen months after the date of recordation of the tax sale by payment in accordance with subparagraph (1) of this paragraph.
After reviewing the record, we find no merit to Padilla’s argument that the Burgers had only eighteen months from the recordation of the tax sale pursuant to La. Const. Art. VII, § 25(B)(2) to exercise their right of redemption. The record contains no evidence that the property was actually sold pursuant to the city’s authority to sell blighted property. The notice of judgment upon which Padilla relies uses the permissive “may” rather than the mandatory “shall” when speaking of the potential sale of the property. Further, a reading of the actual tax sale deed of June 4, 2002 reveals the sale was in fact made for non-payment of ad valorem taxes, not for failure to pay a lien associated with the blighted property declaration. There is no mention therein of the fine and costs for blighted property. Thus, we |7eoncIude *11 the sale was for non-payment of ad valo-rem taxes subject to the peremptive period of three years.[3] For the suggested eighteen month redemption period to apply, the sale would have had to occur under the statutory authority governing sales of blighted property. That did not occur in this case.
Next we address whether or not the tax sale was valid.
Under the Fourteenth Amendment to the United States Constitution and La. Const. Art. I, 2, a person is protected against a deprivation of his life, liberty or property without due process of law. Hamilton v. Royal International Petroleum Corporation, 2005-846, p. 9 (La.2/22/06), 934 So.2d 25, 32 (citation omitted). The fundamental requirement of procedural due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. Id.
In Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), a case with facts similar to the present case, the U.S. Supreme Court interpreted the Due Process Clause with respect to the rights of a mortgagee and the notice requirements of an Indiana statute. In that case, the Mennonite Board of Missions (“Mennonite”) was the mortgagee of record of a certain parcel of property. The property owner failed to pay her taxes and the property was sold at a tax sale. Indiana law did not require that notice be given by mail or personal service to a mortgagee and Mennonite was not given any notice of the impending tax sale.[4] Relying on its earlier decision in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the|sSupreme Court held that “a mortgagee possesses a substantial property interest that is significantly affected by a tax sale” and therefore “is entitled to notice reasonably calculated to apprise him of a pending tax sale.” Mennonite, 462 U.S. at 798, 103 S.Ct. at 2711. Regarding the publication of notice of the impending tax sale in a newspaper and the posting of notice in the county courthouse, the Court stated:
When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee’s last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mid-lane.
Id. (Footnote omitted). The Court further held that:
Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. Furthermore, a mortgagee’s knowledge of delinquency in the payment of taxes is *12 not equivalent to notice that a tax sale is pending.
Id., 462 U.S. at 800, 103 S.Ct. at 2712.
In her Petition to Quiet Title, Padilla alleges she purchased the property at a tax sale conducted by the city. La. Const. Art. VII, 25 requires that prior to conducting a tax sale of property for nonpayment of taxes, the state and/or city must give notice to the delinquent owners in the manner provided by law. La. R.S. 47:2180 provided the manner of giving notice to delinquent owners regarding immovable property.[5]- Furthermore, pursuant to the *13 Supreme Courts holding in | ^Mennonite, supra, a mortgagee, who is reasonably ascertainable, is entitled to prior notice of an impending tax sale.
|inIn support of their motion for summary judgment arguing the tax sale is absolutely null for lack of notice, the Burgers submitted a copy of the recorded mortgage instrument evidencing the credit sale of the Hayne Blvd. property to Schwartz. The document clearly identifies the Burgers as the SELLER and MORTGAGEE and lists their domicile as Orleans Parish. It identifies Schwartz as the PURCHASER and MORTGAGOR and as a domiciliary of Orleans Parish.
The Burgers also presented the affidavit of Ron Burger, who averred that on the date of the act of sale, Schwartz owed a balance of $39,000.00 with interest, and was currently in default. Burger stated that in 1998, 1999, and 2000, the Burgers never received any written notice from the city that taxes were due on the property, and they never received any prior notice, either written or by personal service, of the November 14, 2001 tax sale.
Burger averred that he made two attempts to redeem the property from Padilla, but she refused the requests. He then contacted Walter J. OBrien, Jr., Finance Operations Manager of the Bureau of the Treasury, Department of Finance for the City of New Orleans, in December 2004, to redeem the property, and presented him with a certified check in the amount of $12,783.88, the redemption price. OBrien refused the payment and declined to issue Burger a certificate of redemption. Instead he gave Burger a copy of a Notice of Judgment that evidenced the property had been adjudicated blighted.
In addition to Ron Burgers affidavit, the Burgers submitted an affidavit from Stephen C. Barnes, the abstractor retained by them to conduct an abstract of the property. Barnes averred that his search of the public records disclosed no recordation of the judgment by the Administrative Adjudication Bureau for Public | nHealth, Housing and Environmental Violations adjudicating the property blighted. He further stated that he had requested from Mr. OBrien copies of any records that the city of New Orleans had regarding notice documents of the tax deficiency and/or the November 14, 2001 tax sale. In response, the city informed Barnes that it had no such records.
Neither Padilla nor the city submitted any evidence that disputes the evidence offered by the Burgers to prove they were never given prior notice of the November 14, 2001 tax sale.[6] Absent any evidence *14 that raises a genuine issue of material fact as to whether or not the city gave the Burgers prior notice of the tax sale, we conclude, as did the trial court, that, as a matter of law, the Fourteenth Amendment due process requirement was not satisfied in this case and, therefore, the tax sale is an absolute nullity.
Padilla argues that Mennonite only requires notice to be given to mortgagees whose names and addresses are known or “reasonably ascertainable” and, therefore, is inapplicable to this case, as the Burgers’ addresses are not included in the mortgage documents.
As previously mentioned, the recorded mortgage instrument identifies the Burgers in the following manner:
Lynda Ogden, wife of/and Ronald G. Burger, domiciled in the Parish of Orleans, State of Louisiana; hereinafter referred to as SELLER and/or MORTGAGEE
112Given that the mortgagees names are clearly identified, the question becomes whether the subsequent language, domiciled in the Parish of Orleans, State of Louisiana, meets the test of being reasonably ascertainable for due process notification purposes.
In Mennonite, the majority opinion, noted:
In this case, the mortgage on file with the county recorder identified the mortgagee only as “MENNONITE BOARD OF MISSIONS a corporation, of Wayne County, in the State of Ohio.” We assume that the mortgagee’s address could have been ascertained by reasonably diligent efforts. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317, 70 S.Ct. 652, 658-659, 94 L.Ed. 865 (1950). Simply mailing a letter to “Mennonite Board of Missions, Wayne County, Ohio,” quite likely would have provided actual notice, given “the well-known skill of postal officials and employees in making proper delivery of letters defectively addressed.” Grannis v. Ordean, 234 U.S. 385, 397-398, 34 S.Ct. 779, 784, 58 L.Ed. 1363 (1914). We do not suggest, however, that a governmental body is required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record.
Mennonite, 462 U.S. at 798, 103 S.Ct. at 2711 n. 4.
This Court is cognizant of the tremendous difficulties presented to property owners and mortgage interests in the greater New Orleans area post-Hurricane Katrina. One can argue that imposing a high burden of notification on the local and state governments will greatly increase the administrative costs of establishing some degree of normalcy to the region. Nevertheless, considering the advances in information technology and other available resources, the city through reasonable diligence could have ascertained the Burgers physical and/or mailing address to give them notice of the pending tax sale. The similarity of identification between the mortgagee in Mennonite and the mortgagees in this case are such that we can | lsconclude the city did not afford the *15 Burgers the minimum due process protection recognized in Mennonite.
Also, we find no merit to Padillas argument that the Burgers waived their right to notice of the tax sale because they failed to request notice of the tax sale pursuant to La. R.S. 9:5201[7] or to comply with La. R.S. 47:2180.1[8] (which formerly required mortgagees to notify tax collectors if they wished to be given notice of the tax delinquency on immovable property).
The failure of the Burgers to request notice of a tax sale or tax delinquency is of no consequence here. The failure of the mortgagee to request notice does not constitute a waiver of its due process rights. Davis Oil Company v. Mills, 873 F.2d 774, 787-788 (5th Cir.1989), cert. denied, 493 U.S. 937, 110 S.Ct. 331, 107 L.Ed.2d 321 (1989).[T]he requirements of [La. R.S.] 47:2180.1 cannot be read to shift the burden of notice from the state actor to the party with the property interest (an affirmative duty of the property owner to request notice as compared with the constitutional duty of the state actor to provide notice). Federal Deposit Insurance Corporation v. Lee, 933 F.Supp. 577, 581 (E.D.La.1996), citing Small Engine Shop Inc. v. Cascio, 878 F.2d 883, 890 (5th Cir. 1989). This statute simply supplements Louisianas preexisting constructive notice provisions and allows those with interest in property, who are not reasonably ascertainable to a diligent state actor, an opportunity to request such notice. Id.; see also Bank of West Baton Rouge v. Stewart, 2000-0114, p. 3 (La.App. 1 Cir. 2/16/01), 808 So.2d 464, 466 and Smith v. Brooks, 97-1338, p. 6 (La.App. 3 Cir. 4/15/98) 714 So.2d 735, 738.
114Finally, we address the effect of nullifying the November 14, 2001 tax sale.
La. Civ.Code art.2033 provides, in part: An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.
(Emphasis added).
La. Const. Art. VII, 25(C) provides that “[n]o judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser ...”
The trial court correctly found the November 14, 2001 tax sale to be absolutely null. To give the trial court judgment effect, it shall be amended to order the Burgers to pay the purchase price, and all taxes and costs, plus ten percent per an-num interest on the price and taxes paid from the date of the respective payments. The amended judgment will restore all parties to the status quo ante, i.e., the State keeps its tax payment from Padilla, Padilla receives the redemption amount plus any lawful interest, and the Burgers have their mortgagee rights restored.
DECREE
Accordingly, for the aforementioned reasons, the trial court judgment is amended to order Ronald G. Burger and Lynda Ogden Burger to pay Andrea Padilla the purchase price, and all taxes and costs, plus ten percent per annum 11Binterest on the amount of the price and taxes paid *16 from the date of the respective payments. As amended, the judgment of the trial court is affirmed.
JUDGMENT AMENDED; AND AS AMENDED, AFFIRMED

. Nothing in the record indicates that any action was taken with regard to expropriation or demolition of the property. Likewise no evidence exists that any effort was made to sell the property to satisfy the lien for the fine and costs.

. La. R.S. 47:2228 was repealed by Acts 2008, No. 819, § 2, effective January 1, 2009.

. The Louisiana Supreme Court has held that the three year period in La. Const. Art. VII, § 25(B)(1) is peremptive and cannot be suspended or interrupted. See Harris v. Estate of Fuller, 532 So.2d 1367, 1369 (La.1988).

. The Indiana statute at issue, Ind.Code § 6-1.11-24-1 et seq., required the county auditor to post notice in the county courthouse of the sale of real property for nonpayment of property taxes and to publish notice once each week for three consecutive weeks. It also required the county to give notice by certified mail to the property owner at the owners' last known address, § 6-1.1-24-1, but at the time in question the statute did not provide for notice by mail or personal service to the mortgagee(s) of the property.

. La. R.S. 47:2180 was repealed by Acts 2008, No. 819, § 2, effective January 1, 2009. At the time of the tax sale in question, La. R.S. 47:2180 provided:
Immovable Property, Notice of Delinquency
A. (l)(a) On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes which have been assessed to him on immovable property or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
(b) On the second day of January of each year, or as soon thereafter as possible, in each year following the year in which the original notice of delinquency is made pursuant to Subparagraph (a) herein, the tax collector shall address to each taxpayer who has not paid the taxes which have been assessed to him on immovable property a written notice in the manner provided herein. The notice shall specify the property upon which the taxes are delinquent, the amount of taxes due, and the manner in which the property may be redeemed. The notice shall be made each year until the property is no longer redeemable as provided in Article VII. Section 25(B) of the Constitution of Louisiana. The cost of mailing the notice shall be considered cost for purposes of redemption.
(2) Any taxpayer may designate one additional person to be notified in the event of a delinquency. Such designated person shall receive the same notification as the delinquent taxpayer and such notice shall be made in the manner provided herein.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector ma comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish of Orleans, in the office of the clerk of court for recording and preservation. In the parish of Orleans, such proces verbal shall be filed in the office of the state tax collector for the city of New Orleans and preserved for record. This proces verbal shall be received by the courts as evidence. The tax collector shall be entitled to collect actual mailing costs of each certified, with return receipt, notice, and mileage shall be charged for service of this notice. A like charge will be made if the property is adjudicated to the state or any subdivision thereof.
C.The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all known owners of assessed immovable property situated in his parish, and to non resident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for *13 two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be give in the manner provided by law for judicial sales. He shall pay for the publication, and shall be entitled to collect as costs therefor the pro rata share of the publication costs from each unknown owner or from the property assessed to him. The collector shall certify on his tax rolls that he has published the notices, and tire certificate on either roll shall make full proof thereof until disproved in a judicial proceeding.
D. Within thirty days after the tax sale, or as soon thereafter as possible, the tax collector shall research the records of the clerk of court for transfers on all property sold. Within thirty days of finding a transfer of any property sold at a tax sale, the tax collector shall attempt to serve the new owner with a certified notice that the property was sold and include in the notice the amount necessary to redeem the property. This notice shall also advise the owner that the property may be redeemed at any time within three years from the date recordation of the sale. This shall serve as the required notice to the record owner in Subsection A of this section.

. Although the city filed an "opposition” to the Burgers’ motion for summary judgment, it informed the court that it took no position *14 either for or against either party’s motion for summary judgment. At the first hearing on the motions, the trial court “charged the city to turn over within thirty days all information related to the file or relating to the case.” The trial court emphasized that when it said "all information,” it was “particularly referring to notice information to both the taxpayer, Louis Schwartz, if it exists, and notice information to Ronald and Lynda Burger, if it exists.” Thirty days later, at the second hearing on the matter, the city certified to the court that it had no evidence that the Burgers or Schwartz were given notice of the tax sale.

. La. R.S. 9:5201 was repealed by Acts 1997, No. 584, § 1.

. La. R.S. 47:2180.1 was repealed by Acts 2008, No. 819, § 2, effective January 1, 2009.