MICHAEL E. KIRBY, Judge.
|, At issue in this appeal is the validity of the November 10, 2003 tax sale by the City of New Orleans (“the City”) to Mr. Allen Borne (“Mr. Borne”) of immovable property located at 4121 and 4121 ½ State Street. The matter arises from two cases that were consolidated in the district court for a trial. In the first case, Orleans District Redevelopment Corporation (“ODRC”) filed a petition to quiet tax title against Ocwen Loan Servicing, L.L.C. (“Ocwen”), as the mortgage loan servicer for Lehman Brothers Holdings Inc. (“Lehman Brothers”), the current owner of the promissory note secured by the mortgage on the property. In the second case, Lehman Brothers filed a petition to annul tax sale against ODRC and its predecessor-in-interest, Mr. Borne, alleging the lack of pre-sale notice.
Following the trial, the district court rendered a judgment in favor of ODRC, quieting title to the property and denying the petition to annul the tax sale. Ocwen and Lehman Brothers appealed the judgment. ODRC has filed a motion to dismiss the appeal. For the reasons that follow, we reverse.
| .¿Tanya Shay Stafford (“Ms. Stafford”) acquired the property at issue on July 31, 1995, by Act of Cash Sale, which was recorded in the Orleans Parish Conveyance Office on August 4, 1995. On June 25, 1999, Ms. Stafford executed a mortgage on the property in favor of New Century Mortgage Corporation (“New Century”). The mortgage was recorded in the Orleans Parish Mortgage Office on June 30,1999.
In August 2001, Ocwen began servicing the mortgage loan for New Century. In November 2001, New Century assigned its interest in the promissory note secured by the mortgage to Firstar Bank of Milwaukee, N.A. (“Firstar Bank”); the act of notarial endorsement and assignment of mortgage note and mortgage was recorded in the Orleans Parish Mortgage Office on November 27, 2001. Firstar Bank later merged with U.S. Bank N.A., which assigned its interest in the promissory note secured by the mortgage to Lehman Brothers on April 30, 2007, more than three years after the November 10, 2003 tax sale.
Following the tax sale, the collector of ad valorem taxes for the City executed a tax deed on January 12, 2004, in favor of Mr. Borne, transferring Ms. Stafford’s right, title and interest in and to the property for non-payment of taxes for the years 1996 through 2002, totaling $3,040.19. The tax deed stated that the owner could redeem the property at any time within three years of the filing of the deed in the Orleans Parish Conveyance Office. The sheriff recorded the tax deed conveying the property to Mr. Borne in the Orleans Parish Conveyance Office on March 11, 2004. On May 11, 2004, Mr. Borne sent Ms. Stafford a “redemption *107 laletter” via certified mail advising her that unless she redeemed the taxes within three (3) years of the tax sale deed recor-dation as per La. Const. Article VII, § 25[1] , he would move to quiet title to the property. The certified mail envelope containing the redemption letter was returned to Mr. Borne marked “unclaimed.”
On October 13, 2004, Ms. Stafford sold her interest in the property to Douglas Castro (“Mr. Castro”) by Act of Cash Sale that was later recorded in the Orleans Parish Conveyance Office on April 19, 2005.
|40n March 25, 2009, Mr. Borne transferred all of his right, title and interest in and to the property by quitclaim deed to ODRC. The act of transfer was recorded in the Orleans Parish Conveyance Office on March 30, 2009. On April 3, 2009, ODRC filed its petition to quiet tax title[2] pursuant to La. R.S. 47:2266.[3]
*108 In the meantime, Ocwen had sent a certified letter to Mr. Borne on March 2, 2009, offering to redeem the property, but received no response. Lehman Brothers then filed suit to annul the tax sale, arguing that it is null and void because the City failed to give the required tax sale notice to Ms. Stafford, the record property IfiQwner, or to Firstar Bank, its predecessor-in-interest and the record mortgagee at the time of the sale, citing La. R.S. 47:2121(B).[4]
In its reasons for judgment validating the tax sale and quieting title to the property, the trial court stated that Lehman Brothers was precluded from raising any state or federal due process objections to the tax sale because the petition for nullity was filed beyond the five-year peremptive period set forth in La. Const. Art. VII, § 25. The court determined that since Lehman Brothers was assigned the promissory note and mortgage in 2007, before the expiration of the five-year peremptive period, it would be estopped from challenging the sale and/or deemed as having tacitly ratified that sale, given that the tax sale deed had been filed in the public record since March 2004. Thus, the court concluded any deficiencies regarding the pre-sale notice had been cured.
In its motion to dismiss the appeal, ODRC contends that Ocwen, “a loan servicing company, does not have standing to raise defenses or actions that are admittedly the actions/defenses of a mortgage holder, Lehman Brothers, an entity that did not appeal the judgment at issue.”
Contrary to ODRC’s contention, the record reflects that “Lehman Brothers Holdings Inc., c/o Ocwen Loan Servicing, LLC” timely filed a motion for suspensive appeal *109 of the November 12, 2010 judgment and furnished the ^appropriate security. Given that ODRC named Ocwen, in its capacity as the mortgage servicing agent for Lehman Brothers, as a defendant in the suit to quiet tax title, and that suit was consolidated with Lehman Brothers’ suit to annul the tax sale for the trial, and Lehman Brothers was cast in judgment, Ocwen, as Lehman Brothers’ agent, may appeal the judgment. See La. C.C.P. art. 964.
Next we address whether or not the tax sale was valid.
“Under the Fourteenth Amendment to the United States Constitution and La. Const. Art. I, § 2, a person is protected against a deprivation of his life, liberty or property without ‘due process of law.’ ” Hamilton v. Royal International Petroleum Corporation, 2005-846, p. 9 (La.2/22/06), 934 So.2d 25, 32 (citation omitted). The fundamental requirement of procedural due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. Id.
In Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the U.S. Supreme Court interpreted the Due Process Clause with respect to the rights of a mortgagee and the notice requirements of an Indiana statute. In that case, the Mennonite Board of Missions (“Mennonite”) was the mortgagee of record of a certain parcel of property. The property owner failed to pay her taxes and the property was sold at a tax sale. Indiana law did not require that notice be given by mail or personal service to a mortgagee and Mennonite was not given any notice of the impending tax sale.[5] Relying on its earlier decision in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court held that “a mortgagee possesses a substantial property interest that is significantly affected by a tax sale” and therefore “is entitled to notice reasonably calculated to apprise him of a pending tax sale.” Mennonite, 462 U.S. at 798, 103 S.Ct. at 2711. Regarding the publication of notice of the impending tax sale in a newspaper and the posting of notice in the county courthouse, the Court stated:
When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee’s last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mul-lane.
Id. (Footnote omitted). The Court further held that:
Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. Furthermore, a mortgagee’s knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.
Id., 462 U.S. at 800, 103 S.Ct. at 2712.
In its Petition to Quiet Tax Title, ODRC alleges that Mr. Borne had purchased the *110 property at a tax sale conducted by the City. La. Const. Art. VII, § 25 requires that prior to conducting a tax sale of property for nonpayment of taxes, the city must give notice to the delinquent owners in the manner provided by |slaw. At the time of the tax sale in question, former La. R.S. 47:2180[6] provided the manner of giv *111 ing notice to delinquent owners regarding immovable property.
| ¡¡Furthermore, pursuant to the Supreme Court’s holding in Mennonite, supra, a mortgagee, who is reasonably ascertainable, is entitled to prior notice of an impending tax sale. See also Padilla v. Schwartz, 2006-1517, pp. 8-9 (La.App. 4 Cir. 3/11/09), 11 So.3d 6, 12-13.
At trial, Mr. Walter O’Brien, Finance Operations Manager of the Bureau of the Treasury, Department of Finance for the City, testified that the City had contracted with the law firm of Linebarger, Goggan, Blair & Sampson, LLP, to conduct the tax sales of immovable property for 2003, including the tax sale at issue. He testified that although the City had received a subpoena to produce all documents related to the tax sale of the State Street property, including any pre-sale notices to the property owner and any mortgage holders, the Linebarger firm had those records. Mr. O’Brien testified the Linebarger firm had provided him with the “green cards” for the properties sold at the November 10, 2003 tax sale; he had reviewed all of them and found none that showed a pre-sale notice had been sent to either Ms. Stafford or Firstar Bank. He also testified that the City had no proces verbal for the tax sale conducted by the Linebarger firm.
| xpThe parties submitted into evidence the deposition testimony of Ms. Phillipa Bowers, the Linebarger firm’s managing partner who coordinated and conducted the November 10, 2003 tax sale for the City. Regarding pre-sale notice procedures, Ms. Bowers explained that the firm sent notification letters by certified mail, return receipt requested, to the record property owners and any lienholders of record, and that it advertised the properties and sale date in the Times-Picayune and Louisiana Weekly at least four times prior to the date of the sale. According to her, the City provided the law firm with the necessary and relevant information on the properties to be auctioned. She also explained that because Firstar Bank, the mortgagee of record, had not registered in advance with the City to receive notice of any tax sales on the mortgaged property, no pre-sale notice was or would have been sent to it. Although the Linebarger firm did not have the returned green card, evidencing that Ms. Stafford had received a pre-sale notification letter, Ms. Bowers produced a redacted excerpt from the firm’s ledger that indicated the notice “should have been” mailed to a “Miss Tan-ja [sic] S. Stafford 4121 State Street Drive” in August 2003. Nonetheless, Ms. Bowers acknowledged that she had no personal knowledge as to whether or not notice was, in fact, sent to Ms. Stafford.
The tax sale deed, which was introduced into evidence, includes attestations by the City’s tax collector that the tax sale was properly advertised and that he “made out and mailed to the said Tonja [sic] S. Staf *112 ford by certified letter of a notice [of tax sale] in conformity with the Laws of the State.” These attestations, however, fail to give the date of the purported mailing or the address to which the notice was sent. Moreover, the tax deed does not indicate that any pre-sale notice was given to the mortgagee of record, Firstar Bank.
_Jj_iAfter reviewing the record, we find the evidence indicates the City failed to satisfy the notice requirements of former La. R.S. 47:2180. The evidence, clearly and convincingly, establishes that the City failed to give Firstar Bank, the record mortgagee at the time of the tax sale, notice prior to the tax sale. The evidence also demonstrates that the City failed to provide Ms. Stafford, the record property owner, with proper notice prior to the sale.
The Louisiana Supreme Court has held that failure to provide the requisite notice of the tax sale to each co-owner of record deprives the owners of due process and renders the tax sale null and void in its entirety, with regard to all co-owners, including a co-owner who received notice of the tax sale. See C & C Energy, L.L.C. v. Cody Investments, L.L.C., 2009-2160, p. 1 (La.7/6/10), 41 So.3d 1134, 1136. In view of our finding that the City failed to give Ms. Stafford and Firstar Bank the requisite notice of the tax sale, depriving them of due process, the tax sale is null and void in its entirety.
In its reasons for judgment, the trial court based its decision upholding the tax sale upon the expiration of the five-year peremptive period in La. Const. Art. VII, § 25(C), citing Welsch v. Carmadelle, 264 So.2d 341, 344 (La.App. 4th Cir.1972), where the Court explained that Louisiana law at that time treated a failure to provide notice of delinquency as a relative nullity that could be cured by the expiration of the five-year prescriptive period for annulling tax sales. Since that case was decided, however, the U.S. Supreme Court in Mennonite has held that the failure to provide notice of delinquency to an owner or mortgagee offends the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and, consequently, renders the tax sale an absolute nullity, such that neither peremption 112nor prescription can save the sale. And the Louisiana Supreme Court has followed Mennonite in C & C Energy, L.L.C. v. Cody Investments, supra, and Lewis v. Succession of Johnson, 05-1192 (La.4/4/06), 925 So.2d 1172, holding the tax sales in those cases to be absolute nullities for failure to provide the required notice of the tax sale. Therefore, we find the trial court erred in upholding the validity of the November 10, 2003 tax sale and quieting the tax title to the subject property.
DECREE
Accordingly, for the aforementioned reasons, we reverse the judgment of the trial court. We declare the November 10, 2003 tax sale to Mr. Allen Borne to be an absolute nullity. We, therefore, annul the tax sale subject to La. Const. Art. VII, § 25(C) and its included provision that “[n]o judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser,” Mr. Borne.
REVERSED

.On the date of the tax sale, the provisions of La. Const. Art. VII, § 25, pertinent to this matter, provided:
(A) Tax Sales. (1) There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector without suit, and after giving notice to the delinquent in the manner provided by law shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal, as provided by law for sheriff’s sales, in the manner provided for judicial sales. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
******
(B) Redemption. (1) The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.
******
(C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.
(D)Quieting Tax Title. The manner of notice and form of proceeding to quiet tax titles shall be provided by law.

. ODRC named both Ocwen and Mr. Castro as defendants. The record indicates that Mr. Castro, an absent defendant, was properly served with the suit though a court appointed curator ad hoc.

. La. R.S. 47:2266. Procedure to quiet tax titles
A. (1) After expiration of the redemptive period, an acquiring person may institute an ordinary proceeding against the tax sale parties whose interests the petitioner seeks to be terminated. The petition shall contain a description of the property, the time and place of the sale, and the name of the officer who made the sale, the page and record book and date of filing of the tax sale certificate, and for adjudicated properties sold or donated by a political subdivision, reference to the page of record book and date of filing of the sale or donation, notice that the petitioner is the holder of tax sale title to the property by virtue of tax sale *108 or is the owner of the property by virtue of a sale or donation of adjudicated property, and notice that the title and full ownership in the property will be confirmed unless a proceeding to annul is instituted within six months after the date of service of the petition and citation. This suit shall be brought in the parish in which the property is located unless it lies in two or more parishes, in which case this suit may be instituted in either of the parishes.
(2) The petition and citation shall be served as in ordinary suits; however, if a tax sale party is a nonresident of the state, is unknown, or his residence is unknown, the court shall appoint a curator ad hoc to represent hi and receive service. The curator shall receive a reasonable fee for his services to be fixed by the court in each suit, which shall be taxed as costs of suit. If no proceeding to annul the sale has been instituted after the lapse of six months after the date of service of petition and citation, judgment shall be rendered quieting and confirming the title and the full ownership interest therein.
B. In all cases when tax titles have been quieted by prescription of five years under the provisions of Article VII, Section 25 of the Louisiana Constitution, the purchaser, donee, or his heirs or assigns may, either obtain a judgment of the court confirming the title by suit in the manner and form in Subsection A of this Section, except that he delay for answer shall be ten days instead of six months, provided that the failure to bring suit shall in no manner affect such prescriptive titles.
C. The petitioner may file a notice of lis pendens with the recorder of mortgages of the parish in which the property is located. A transfer, mortgage, lien, privilege, or other encumbrance filed after the filing of the notice of lis pendens shall not affect the property. The recorder of mortgages of the recorder of conveyances shall cancel, erase, terminate, or release the acts upon the request of the petitioner.

. La. R.S. 47:212I(B), provides:
B. Effect of tax sale on property interest. No tax sale shall transfer or terminate the property interest of any person in tax sale property or adjudicated property until that person has been duly notified and both the redemptive period and any right held by that person to assert a payment or redemption nullity under R.S. 47:2286 have terminated.

. The Indiana statute at issue, Ind.Code § 6-1.11-24-1 et seq., required the county auditor to post notice in the county courthouse of the sale of real property for nonpayment of property taxes and to publish notice once each week for three consecutive weeks. It also required the county to give notice by certified mail to the property owner at the owners' last known address, § 6-1.1-24-1, but at the time in question the statute did not provide for notice by mail or personal service to the mortgagee(s) of the property.

. La. R.S. 47:2180 was repealed by Acts 2008, No. 819, § 2, effective January 1, 2009. The substance of former La. R.S. 47:2180, 2180.1 and 2181 was consolidated and reproduced, with certain modifications, and renumbered as current La. R.S. 47:2153 by Acts 2008, No. 819, § 1. At the time of the tax sale in question, La. R.S. 47:2180 provided:
Immovable Property, Notice of Delinquency
A. (l)(a) On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes which have been assessed to him on immovable property or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
(b) On the second day of January of each year, or as soon thereafter as possible, in each year following the year in which the original notice of delinquency is made pursuant to Subparagraph (a) herein, the tax collector shall address to each taxpayer who has not paid the taxes which have been assessed to him on immovable property a written notice in the manner provided herein. The notice shall specify the property upon which the taxes are delinquent, the amount of taxes due, and the manner in which the property may be redeemed. The notice shall be made each year until the property is no longer redeemable as provided in Article VII. Section 25(B) of the Constitution of Louisiana. The cost of mailing the notice shall be considered cost for purposes of redemption.
(2) Any taxpayer may designate one additional person to be notified in the event of a delinquency. Such designated person shall receive the same notification as the delinquent taxpayer and such notice shall be made in the manner provided herein.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed here-
in, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor’s property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish of Orleans, in the office of the clerk of court for recording and preservation. In the parish of Orleans, such proces verbal shall be filed in the office of the state tax collector for the city of New Orleans and preserved for record. This proces verbal shall be received by the courts as evidence. The tax collector shall be entitled to collect actual mailing costs of each certified, with return receipt, notice, and mileage shall be charged for service of this notice. A like charge will be made if the property is adjudicated to the state or any subdivision thereof.
C.The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all known owners of assessed immovable property situated in his parish, and to non-resident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales. He shall pay for the publication, and *111 shall be entitled to collect as costs therefor the pro rata share of the publication costs from each unknown owner or from the property assessed to him. The collector shall certify on his tax rolls that he has published the notices, and the certificate on either roll shall make full proof thereof until disproved in a judicial proceeding.
D. Within thirty days after the tax sale, or as soon thereafter as possible, the tax collector shall research the records of the clerk of court for transfers on all property sold. Within thirty days of finding a transfer of any property sold at a tax sale, the tax collector shall attempt to serve the new owner with a certified notice that the property was sold and include in the notice the amount necessary to redeem the property. This notice shall also advise the owner that the property may be redeemed at any time within three years from the date recordation of the sale. This shall serve as the required notice to the record owner in Subsection A of this section.