MAX N. TOBIAS, JR., Judge.
| ¡.The plaintiff, Brookewood Investments Co., L.L.C. (“Brookewood”), appeals the trial court’s judgment that failed to adjudicate a tax sale as an absolute nullity, in addition to its determination that Brooke-wood’s only source of reimbursement is from the defendant, Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C. (“Sixty-Three”) and Jacob Morreale (“Morreale”) and not the City of New Orleans (“the City”). For the following reasons, we amend the trial court’s judgment and affirm the judgment as amended.
In 2006, Brookewood filed a motion for writ of seizure and possession, seeking corporeal possession of certain immovable property located at 6324 Chef Menteur Highway, New Orleans, Louisiana. Brookewood had acquired the property, which was assessed in the name of Mr. V.A. Morreale, on 10 November 2003 at a tax sale conducted by the City of New Orleans subsequent to the accumulation of $591,343.03 in unpaid ad valorem taxes for years 1999, 2000, 2001, and 2002. Brooke-wood paid the full amount of the taxes, in addition to $140.00 in costs. A tax deed memorializing the transaction was recorded at CIN 281131 on 20 April 2004 in the Orleans Parish conveyance records.[1]
^Responding to Brookewood’s motion, Sixty-Three and Morreale filed a recon-ventional demand seeking to annul the tax sale on the grounds that the City had assessed the property in an erroneous name and failed to provide the requisite notice to the proper owner of record. At the time of the advertisement and eventual tax sale, the assessment records indicated that the property was owned by V.A. Morreale for nearly forty years.[2] Pursuant to an Act of Capital Contribution dated 30 September 1994, Sixty-Three became the owner of the property; recordation of this property transfer was never made.[3]
Brookewood then filed a third-party demand against the City and Norman S. Foster, in his capacity as the Ex-Officio Tax Collector of the City. Brookewood averred that pursuant to La. C.C. art. 2033, in the event the tax sale was deemed an absolute nullity, it would be owed reimbursement by the City in the full amount of the taxes and costs associated with the 10 November 2003 tax purchase since the City’s agents or officers erred by failing to serve notice of the transfer to the proper owner of record.[4]
*331 On 16 November 2011, following a trial on the merits and determining that the City failed to comply with the notice requirements set forth in La. R.S. 47:2180, the trial court rendered judgment annulling the tax sale and ordering the “judgment to take effect only upon the defendant owner of record making full Inpayment of the taxes, costs and interest at ten percent per annum accruing as of 10 November 2003.” Additionally, the trial court ruled that while reimbursement is owed to Brookewood for the funds it expended in the 2008 tax sale purchase, the City is not the responsible party, but rather, the defendant owner of record is Brookewood’s sole source of relief.
On 24 February 2012, the trial court issued a final judgment decreeing the tax sale and the related tax deed a nullity and, further ordered that, pursuant to La. Const. Art. VII, § 25(C) and La. R.S. 47:2290 and 2291, Sixty-Three is liable to Brookewood in the amount of $1,617,698.20, with interest thereon at the rate of ten percent annum from the date of the signing of the judgment.[5] The judgment further declared that all other prior judgments were preliminary and/or interim in nature.
Brookewood’s timely appeal followed.
Brookewood’s appeal raises two questions of law, which we review de novo. Louisiana Municipal Association v. State, 04-0227, p. 35 (La.1/19/05), 893 So.2d 809, 836; Provident Bank v. Leslie, 08-1449, p. 5 (La.App. 4 Cir. 1/13/10), 28 So.3d 1196, 1199.
IsFirst, Brookewood avers that although the trial court ruled the tax sale a nullity, it erroneously failed to adjudicate the tax sale an absolute nullity. We agree.
“Under the Fourteenth Amendment to the United States Constitution and Louisiana Constitution Article I, § 2, a person is protected against a deprivation of his life, liberty or property without ‘due process of law.’” Hamilton v. Royal International Petroleum Corp., 05-846, p. 9 (La.2/22/06), 934 So.2d 25, 32 (citations omitted). The fundamental requirement of procedural due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. Id.
La. Const. Art. VII, § 25(A) requires that prior to conducting a tax sale of property for nonpayment of taxes, the political subdivision must give notice to the delinquent owner in the manner provided by law. Further, in enacting La. R.S. 47:2180, the legislature established the manner in which notice of delinquency of taxes on immovable property is to be provided in compliance with La. Const. Art. *332 VII, § 25.[6] “In sum, notice is a constitutional requirement, and want of notice is *333 17fatal to a tax sale.” Lewis v. Succession of Johnson, 05-1192, p. 8 (La.4/4/06), 925 So.2d 1172, 1177 (citing Adsit v. Park, 144 La. 934, 81 So. 430 (1919)). The Louisiana Supreme Court has held that, as a matter of law, failure to satisfy the Fourteenth Amendment due process notice requirement renders the tax sale null and void in its entirety, or absolutely null. See C & C Energy, L.L.C. v. Cody Investments, L.L.C., 09-2160, p. 10 (La.7/6/10), 41 So.3d 1134, 1141; Orleans District Redevelopment Corp. v. Ocwen Loan Servicing, 11-0260, p. 12 (La.App. 4 Cir. 12/21/11), 83 So.3d 105, 112; Padilla v. Schwartz, 06-1517, p. 11 (La.App. 4 Cir. 3/11/09), 11 So.3d 6, 14; Sutter v. Dane Investments, Inc., 07-1268, p. 9 (La.App. 4 Cir. 6/4/08), 985 So.2d 1263, 1269.
Accordingly, as a matter of law, we amend the trial court judgment to reflect that the tax sale at issue was an absolute nullity.
Next, Brookewood, relying on La. C.C. art. 2033, (see footnote 4, supra), contends the trial court erred in determining that its only right of reimbursement for monies expended relative to the tax sale, plus interest and cost, is against the tax debtor. In ordering Sixty-Three to reimburse Brookewood, the trial court relied upon La. Const. Art. VII, § 25(C), which states in pertinent part:
No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser.
Further, Brookewood avers that, where the tax sale is deemed a complete nullity, the provisions of the constitution do not apply. Specifically, Brookewood 1 scontends that upon finding the tax sale an absolute nullity, in order to restore the parties to the situation that existed prior to the invalid tax sale as is required by La. C.C. art. 2033, the court need not apply the constitution. Moreover, when applying La. C.C. art. 2033 to the tax sale at issue, Brookewood contends the City is the responsible party for returning the consideration.[7]
In support of its position that its right of reimbursement is against the City and not *334 Sixty-Three, and that the trial court erroneously applied La. Const. Art. VII, § 25(C), Brookewood cites several cases addressing the absolute nullity of a tax sale when notice of the sale is found lacking.[8] However, we hold the cases relied upon by Brookewood are inapposite to the instant case because none of them address the issue of who is the responsible party for reimbursing the tax purchaser after a tax sale is annulled for insufficient notice.
In addressing the issue of “who is required to pay whom,” and determining that Brookewood’s sole right of reimbursement is against Sixty-Three, the trial court found the decision in Westwego Canal & Terminal Co., Inc. v. Pitre, 197 La. 374, 1 So.2d 550 (La.1941), was directly on point. In Pitre, the purchase of the | ¡plaintiffs immovable property at a tax sale had previously been declared an absolute nullity. In the proceedings, the tax purchaser was enjoined from interfering with the owner’s possession of the property, with a reservation to the tax purchaser of any reimbursement right she had for the amount paid for the property at the tax sale. Applying the express provision found in La. Const. Art. X, § 11(1921), providing that “[n]o judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser,” the court remanded the matter to the trial court to afford the tax purchaser an opportunity to prove the amount of reimbursement to which she was entitled from the property owner. On remand, the property owner attempted to amend its petition claiming, in the alternative, that because the sale was declared an absolutely nullity, the tax purchaser was not entitled to recover the amount she paid for the property. The Court held that the trial court was correct in its determination that, pursuant to La. Const. Art. X, § 11(1921), when a tax sale is declared null, other than “sales annulled on account of the taxes having been paid prior to the date of the tax sale,” the record owner of the property is the party responsible for reimbursing the tax purchaser. Id., 197 La. at 377, 1 So.2d at 551.
We find the Supreme Court’s decision in Lindner v. City of New Orleans, 116 La. 372, 40 So. 736 (1906) and its progeny to be dispositive of the reimbursement issue in this case. In Lindner, the tax purchaser, who was evicted following suit filed by the record owner of the property because the sale had not been sufficiently advertised, sought reimbursement from the City in an amount for [ inwhich the owner subsequently sold the property, in addition to costs and attorney’s fees he expended in connection with acquiring the property at the tax sale. The Court, in affirming the trial court’s dismissal of the suit on the City’s exception of no cause of action, stated the following:
It appears that in the litigation with the owner of the property, plaintiff recovered the amounts paid by him therefor, together with costs and interest, as provided by article 233 of the Constitution of 1898.[9] This being the remedy *335 provided by our fundamental law, he has no standing for the prosecution of this suit, and even had he availed himself of the remedy so provided, the case would be the same since the fault would have been his. A tax sale, in the absence of special legislation to the contrary, is generally held to be subject to the rule caveat emptor, and the purchaser assumes the risk of all legalities and irregularities in the proceedings, of which, as they are open to his inspection, he is presumed to have notice.
He is therefore without recourse against the municipality at the instance of which the sale is made, and which, not pretending to sell its own property, warrants neither the title nor the return of the price. [Citations omitted; emphasis added.]
Id. See Riddell v. City of New Orleans, 8 Teiss. 3, 8 Orleans App. 3, 1910 WL 1592 (La.App.Orl.1910)(holding that Lindner was “correctly decided that ... the only remedy of the purchaser at a tax sale afterwards annulled, was to reclaim from the owner, the purchase price paid.” [Emphasis added.]); Riddell v. Ringe, 11 Teiss. 157, 1914 WL 1935 (La.App.Orl.1914)(pursuant to Article 233 of the InConstitution of 1913,[10] the tax debtor must reimburse all costs expended by the purchaser at the tax sale before the former can get benefit of judgment annulling the tax sale); In re Land Development Co. of La., 12 Teiss. 147, 1915 WL 1633 (La.App.Orl.1915)(holding that a judgment annulling a tax sale has no effect until the tax debtor reimburses to the tax purchaser the price and all taxes paid by him with interest as provided by the constitution); Mattern v. Parqutt, 10 La.App. 769, 771, 123 So. 189, 190 (La.App.Orl.1929)(applying La. Const. Art. X, § 11 (1921)) (a judgment annulling a tax sale could not be executed until the tax debtor paid to the tax purchaser the amount paid by the latter for the property at the tax sale, and all taxes, with interest at the rate of ten per cent per annum on all items); Robinson v. Zor, Inc., 174 So.2d 154, 157 (La.App. 4th Cir.1965); Garry v. Zor, Inc., 181 So.2d 828, 832-33 (La.App. 4th Cir.1966).
Therefore, we hold that, there being no material change in the Louisiana Constitutions of 1898, 1913, 1921, and 1974 regarding the provision requiring that no judgment annulling a tax sale shall have effect until the price, taxes, costs, et cet-era, be previously paid to the purchaser, Lindner and its progeny remain the law of this state. Accordingly, we affirm the trial court’s judgment holding that Brooke-wood’s right of redemption is solely against the tax debtor or record owner of the property, Sixty-Three, and not against the City.
CONCLUSION
Based upon the foregoing, we amend the trial court judgment to reflect the [ 12absolute nullity of the tax sale, and affirm the judgment as amended.

AMENDED; AFFIRMED AS AMENDED.

. The record on appeal is devoid of certain pleadings. See La. C.C.P. art. 2128. Therefore, we glean the facts from that part of the record before us.

. According to the record, Conveyance Office Book ("COB”) 660, folio 44 reflected that Vincent A. Morreale and Jacob V. Morreale acquired the immovable property at issue in 1964; records held in COB 679, folio 450 reflect that, in 1968, Jacob Morreale obtained sole ownership of the property.

. The record is silent as to whether Sixty-Three or Jacob Morreale made any effort to notify the assessor’s office of the ownership change.

. La. C.C. art. 2033 provides, in pertinent part:
*331 An absolutely null contract ... that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made.
Cf., La. C.C. art. 2506 (1870).

. The 24 February 2012 judgment further ordered that "pursuant to Article VII, Section 25(C) of the Louisiana Constitution and La. R.S. 47:2290 and 2291, the declaration of nullity shall only be effective and cancelation and removal of the related tax deed filed as CIN 281131 from the conveyance records for Orleans parish, shall only take place upon Sixty-Three Twenty Four Chef Menteur Highway, L.L.C. making full and complete payment to Brookewood Investment Co., L.L.C. of the amount set forth [above] within one year from the date of the signing of this Judgment and upon an Order of this court issued pursuant to La. R.S. 47:2291(D).” In addition, the judgment ordered that, pursuant to La. R.S. 47:2291 C, the failure of Sixty-Three to make full and complete payment within one year of the signing of the judgment would result in a vacating of the declaration of nullity, and further, that Sixty-Three’s re-conventional demand to annul the tax sale would be dismissed with prejudice.

. La. R.S. 47:2180 was repealed by Acts 2008, No. 819, § 2, effective 1 January 2009. At the time of the tax sale in question, it provided:
Immovable Property, Notice of Delinquency
A. (l)(a) On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes which have been assessed to him on immovable property or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
(b) On the second day of January of each year, or as soon thereafter as possible, in each year following the year in which the original notice of delinquency is made pursuant to Subparagraph (a) herein, the tax collector shall address to each taxpayer who has not paid the taxes which have been assessed to him on immovable property a written notice in the manner provided herein. The notice shall specify the property upon which the taxes are delinquent, the amount of taxes due, and the manner in which the property may be redeemed. The notice shall be made each year until the property is no longer redeemable as provided in Article VII, Section 25(B) of the Constitution of Louisiana. The cost of mailing the notice shall be considered cost for purposes of redemption.
(2) Any taxpayer may designate one additional person to be notified in the event of a delinquency. Such designated person shall receive the same notification as the delinquent taxpayer and such notice shall be made in the manner provided herein.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal domicilary [sic] service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish of Orleans, in the office of the clerk of court for recording and preservation. In the parish of Orleans, such proces verbal shall be filed in the office of the state tax collector for the city of New Orleans and preserved for record. This proces verbal shall be received by the courts as evidence. The tax collector shall be entitled to collect actual mailing costs of each certified, with return receipt, notice, and mileage shall be charged for service of the notice. A like charge will be made if the property is adjudicated to the state or any subdivision thereof.
C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all known owners of assessed immovable property situated in his parish, and to non resident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales. He shall pay for the publication costs from each unknown owner or from the property assessed to him. The collector shall certify on his tax rolls that he has published notices, and the certificate on either roll shall make full proof thereof until disproved in a judicial proceeding.
D. Within thirty days after the tax sale, or as soon thereafter as possible, the tax collector shall research the records of the clerk of court for transfers on all property sold. Within thirty days of finding a transfer of any property sold at a tax sale, the tax *333 collector shall attempt to serve the new owner with a certified notice that the property was sold and include in the notice the amount necessary to redeem the property. This notice shall also advise the owner that the property may be redeemed at any time within three years from the date of recordation of the sale. This shall serve as the required notice to the record owner in Subsection A of this section.

. According to Brookewood, before the tax sale occurred, Sixty-Three owned the property, upon which there was a tax lien in favor of the City for unpaid ad valorem taxes, and Brookewood had not yet paid $591,343.03 in consideration for the sale of the property to the City. Moreover, after the tax sale occurred and by virtue of the tax deed issued by the City, Brookewood was the owner of the property, Sixty-Three had a right to redeem the property from Brookewood, and the City received $591,343.03 from Brookewood in consideration of the tax sale. Brookewood contends that in order for the parties to be restored to the status that existed prior to the sale in accordance with article 2033, (1) the tax sale and deed must be cancelled in the conveyance records, which will restore Sixty-Three Twenty as the record owner of the property, (2) the tax lien of the City must be restored, and (3) consideration must be returned by the City to Brookewood. Brooke-wood avers that by requiring Sixty-Three, rather than the City, to reimburse the consideration, the trial court fails to restore the parties to the pre-sale status because Sixty-Three remains deprived of its property-until it remits payment to Brookewood, which includes a thirty percent collection penalty imposed by the City over and above the amount of the taxes that were actually due, plus interest and costs associated with the defective sale.

. Brookewood cited the following cases in support of its position on appeal: Jamie Land Co., Inc. v. Atwood, 06-2057 (La.App. 1 Cir. 6/8/07), 965 So.2d 873; Sutter v. Dane Investments, Inc., 07-1268, 07-1269 (La.App. 4 Cir. 6/4/08), 985 So.2d 1263; and Cressionnie v. Intrepid, Inc., 03-1714 (La.App. 1 Cir. 5/14/04), 879 So.2d 736.

. La. Const. Art. 233 (1898) provided, in pertinent part:
No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser.

. La. Const. Art. 233 (1913), stated the identical language of La. Const. Art. 233 (La.1898) as set forth in footnote 9 above.