DENNIS R. BAGNERIS, SR., Judge.
11 This appeal arises out of the trial court’s nullification of a tax sale by the purchaser, Mooring Tax Asset Group (Mooring), and the judgment that granted the Motion To Contest Costs of defendant/appellee, Roderick James, a subsequent purchaser of the property. Mooring appeals that portion of the judgment that provided that no taxes, costs, interest, or penalties were owed to or to be reimbursed to Mooring; that Mr. James was not responsible for any amount due to the tax purchaser under La. Const. Art. VII, § 25(C); and that the declaration of the nullity was to be effective immediately. Finding no error in the judgment, we affirm.
FACTS/PROCEDURAL HISTORY
On September 22, 1997, Charles and Connie Brown purchased the residential *655 immovable property located at 7047 Lake Willow Drive in New Orleans, Louisiana, pursuant to a “Cash Sale of Property.” The Cash Sale of Property was recorded in the Orleans Parish Conveyance Records on September 27, 1997. The City alleged that the Browns became delinquent on their property 12taxes. Thereafter, Mooring bought the property at a tax sale on November 8, 2004 (2004 Tax Sale). The City Tax Collector executed a tax deed that purportedly conveyed the property to Mooring on December 21, 2004 (2004 Tax Deed); the tax deed was recorded in the Conveyance Records on April 25, 2005.
Seemingly unaware of these events, the Browns sold the property to NARA, L.L.C. pursuant to a “Cash Sale.” The sale was recorded in the Orleans Parish Conveyance Records on April 23, 2007. Subsequent thereto, NARA sold the property to Mr. James on June 9, 2008; his sale was recorded on June 18, 2008.
Mooring filed its Petition to Quiet Title on May 21, 2010, seeking to terminate Mr. James’ interest in the property. The suit alleged that Mr. James failed to timely redeem the property from the 2004 Tax Deed that was recorded on April 25, 2005. In response, Mr. James filed an Exceptions and Answer to Petition to Quiet Title and Reconventional Demand pleading. It alleged in part that the sale should be nullified due to lack of sufficient pre-sale notice and for lack of sufficient pre-sale advertisement. Mr. James filed a motion for summary judgment on these grounds. After a hearing, the trial court granted the motion and ruled that the 2004 Tax Sale and the 2004 Tax Deed were absolute nul-lities.
Mooring contended that the declaration of nullity should be preliminary, rather than a final judgment, until it was paid costs that were allowed pursuant to La. R.S. 47:2291.[1] Mr. James responded that La. R.S. 47:2291 did not apply to |3the present matter because the statute was only applicable to tax sales that occurred after January 1, 2009. However, Mr. James conceded that under some conditions, La. Const. Art. VII, § 25(C)[2] delays the effects of a tax sale nullification until certain costs are paid to the purchaser. Accordingly, the trial court issued a judgment allowing Mooring to submit proof of costs and allowing Mr. James to contest costs.
*656 On January 18, 2013, Mooring submitted an “Affidavit of Proof of Cost Pursuant to La. R.S. 47:2291(B)(3)The Affidavit alleged total costs of $37,495.95. Mr. James countered in his Motion to Contest Costs that Mooring had not made a true claim for costs; and that even if Mooring made such a claim, it was not entitled to recover costs where the tax sale was an absolute nullity. Mr. James added that in the event costs and taxes were owed, they were not recoverable from |4a third-party purchaser, such as Mr. James, who had no interest in the property at the time of the tax sale.
The matter came for hearing on February 25, 2013. Upon hearing argument, the trial court granted Mr. James’ Motion to Contest Costs. It found that the 2004 Tax Sale and the 2004 Tax Deed were absolute nullities; therefore, Mooring was not owed or entitled to be reimbursed for taxes, costs, interest, or penalties. The court then ordered the cancellation of the 2004 Tax Sale Deed from the Conveyance Record, which gave immediate effect to the declaration of nullity. This appeal followed.
Mooring’s appeal does not contest that the tax sale of the property was an absolute nullity. Instead, Mooring argues that the judgment erred in granting Mr. James’ Motion to Contest Costs and in giving immediate effect to the declaration of nullity-
DISCUSSION
Mooring’s first assignment of error represents that the trial court erred when it found that nothing was due to Mooring and failed to set the amount due pursuant to La. R.S. 47:2291. Mooring points out that the purpose of this statute is to determine the costs owed to the tax sale pur-ehaser in the event there is a judgment of nullity. While Mooring properly states the intent of the statute, this Court agrees with Mr. James that the statute does not apply to the present case. As noted by Mr. James, La. R.S. 47:2291 was a part of a legislative overhaul of tax sale statutes that became effective on January 1, 2009. The changes in these [ statutes were substantive in nature; and thus apply prospectively only. See La. C.C. art. 6.[3] Consequently, because the disputed tax sale in this ease happened in 2004, Mooring is not entitled to any relief afforded by La. R.S. 47:2291.
Although Mooring may not be entitled to any relief allowed by La. R.S. 47:2291, Mooring’s next assignment of error asserts that La. Const. Art. VII, § 25(C) gives it another mechanism to recover its tax sale expenditures. It argues that the constitution provides that as the tax sale purchaser, Mooring is entitled to reimbursement for the tax sale purchase price, subsequent annual taxes paid, and for interest on those amounts. As a result, Mooring claims the district court erred in finding that Mr. James, as the current owner, was not required to reimburse Mooring based on the court’s determination that the tax sale was an absolute nullity.
In support of its position, Mooring cites this Court’s decision in Brookewood Investments Co. v. Sixty-Three Twenty-Four Chef Menteur Highway, LLC and Jacob V. Morreale, 2012-1205 (La.App. 4 Cir. 1/16/13), 108 So.3d 329. Brookewood held that the tax purchaser’s right of redemption was solely against the tax debtor or record owner of the property. Accordingly, this Court must decide, whether *657 based on Brookewood, La. Const. Art. VII, § 25(C) compels Mr. James as a third party purchaser, to reimburse Mooring for his tax sale expenditures before the annulled tax sale can be given effect. We find that it does not. Based upon our review, the facts in Brookewood are distinguishable from the case at bar and moreover, its holding does not require Mr. James, who was neither | Bthe record property owner nor the tax debtor at the time of the 2004 Tax Sale, to reimburse Mooring any costs.
In Brookewood, the trial court nullified a tax sale because the City had failed to comply with notice requirements. At the time of the 2003 tax sale, the property was still assessed in the name of V.A. Morr-eale, although Sixty-Three had become the actual property owner in 1994. Brooke-wood Investments, the tax sale purchaser, argued that the trial court erred in determining that La. Const. Art. VII, § 25(C) limited it to seek reimbursement costs only against the tax debtor and not against the City. Instead, Brookewood Investments claimed that because the tax sale was a nullity, La. C.C. art.2033 required that the parties be placed in their original position, which meant that the City should reimburse Brookewood Investments for the amount that it had paid the City for the tax sale. However, this Court rejected that argument. The opinion relied on the Supreme Court’s decision in Lindner v. City of New Orleans, 116 La. 372, 40 So. 736 (1906) and its progeny to limit the tax purchaser’s right of reimbursement after a tax sale nullification to the tax debtor/record property owner. Brookewood, in citing the Lindner opinion, stated:
A tax sale, in the absence of special legislation to the contrary, is generally held to be subject to the rule caveat emptor, and the purchaser assumes the risk of all legalities and irregularities in the proceedings, of which, as they are open to his inspection, he is presumed to have notice. He is therefore without recourse against the municipality at the instance of which the sale is made, and which, not pretending to sell its own property, warrants neither the title nor the return of the price. [Citations omitted; emphasis added.]
Id. See Riddell v. City of New Orleans, 8 Teiss. 3, 8 Orleans App. 3, 1910 WL 1592 (La.App.Orl.1910) (holding that Lindner was “correctly decided that ... the only remedy of the purchaser at a tax sale afterwards annulled, was to reclaim from the owner, the |7purchase price paid.” [Emphasis added.]); Riddell v. Ringe, 11 Teiss. 157, 1914 WL 1935 (La.App.Orl.1914)(pursuant to Art. 233 of the Constitution of 1913, the tax debtor must reimburse all costs expended by the purchaser at the tax sale before the former can get benefit of judgment annulling the tax sale); In re Land Development Co. of La., 12 Teiss. 147, 1915 WL 1633 (La.App.Orl.1915)(holding that a judgment annulling a tax sale has no effect until the tax debtor reimburses to the tax purchaser the price and all taxes paid by him with interest as provided by the constitution); Mattern v. Parqutt, 10 La.App. 769, 771, 123 So. 189, 190 (La.App.Orl.1929)(applying La. Const. Art. X, § 11 (1921)) (a judgment annulling a tax sale could not be executed until the tax debtor paid to the tax purchaser the amount paid by the latter for the property at the tax sale, and all taxes, with interest at the rate of ten per cent per annum on all items); Robinson v. Zor, Inc., 174 So.2d 154, 157 (La.App. 4th Cir.1965); Garry v. Zor., 181 So.2d 828, 832-33 (La.App. 4th Cir.1966).
Brookewood, 2012-1205 at pp. 10-11, 108 *658 So.3d at 335.[4]
In the present matter, Mooring argues that because Brookewood stated that the tax purchaser’s right of redemption was against the tax debtor or record owner of the property, Mr. James should be compelled to pay its costs because Mr. James is the current property owner. However, a careful reading of Brookewood, Lindner, and the other cases referenced herein limits the tax purchaser’s right of redemption to the tax debtor; the record property owner’s liability results only from his status as the tax debtor. These decisions highlight that the purpose of the statutes that delay the effect of an annulled tax sale until the tax debtor reimburses the tax purchaser all statutory expenditures owed is to ensure that the tax debtor |sdoes not get unjustly get the benefit of nullification, ie. property ownership with a clear title, by avoiding his tax obligations. See Riddell v. Ringe, supra. Mr. James’ status as a subsequent purchaser and the current property owner does not meet that purpose.
Indeed we find that in the present matter, Mooring has even a lesser claim for recovery against Mr. James, as the third-party purchaser, than Brookewood Investments had against the City in the Brookewood case. Mr. James was not the record owner of the property and had no obligation to pay taxes on the property at the time of the 2004 Tax Sale. Mr. James made no warranties to Mooring to induce it to purchase the property. He did not warrant the title to the property nor the return of the purchase price. Although Mooring suggests that Mr. James benefit-ted because it paid the property’s outstanding tax liability, a tax sale, absent special legislation, is generally subject to the rule of caveat emptor where the purchaser assumes the risks of all legalities and irregularities in the proceedings. See Lindner, 116 La. 372, 40 So. at 736.
In determining who is required to pay whom in this tax sale nullification, we conclude that no special legislation existed at the time of the 2004 Tax Sale and the 2004 Tax Deed, including Const. Art. VII, § 25(C), that would require Mr. James as a subsequent third-party purchaser to reimburse Mooring. Therefore, this Court need not decide whether the trial court erred in granting the Motion To Contest Costs on the grounds that the underlying tax sale was an absolute nullity. Appellate courts review the correctness of the judgment, rather than the reasons for the underlying judgment. Schurr v. O’Dwyer, 09-24, p. 4 (La.App. 5 Cir. 9/3/09), 22 So.3d 959, 960-961. In the instant case, Mr. James breached no duty |9owed to Mooring. Hence, the trial court properly decided that Mr. James was not responsible for reimbursing Mooring.
We next review Mooring’s last assignment of error that alleges the trial court erred when it ruled that the judgment was *659 to be effective immediately and that the subject Tax Deed was to be canceled prior to the payment of any amounts due to Mooring. However, in light of our finding that Mooring has no reimbursement remedy against Mr. James and the tax debtor was not a party to this litigation, the trial court did not err in giving immediate effect to the judgment of nullification.
Wherefore, based upon the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
LEDET, J., Concurs With Reasons.
BELSOME, J., Dissents With Reasons.
JENKINS, J., Dissents.

. La. R.S. 47:2291 provides in pertinent part that upon the conclusion of the action for nullity, the court shall:
A. ...
(1) Issue a preliminary order that the tax sale, an acquisition of full ownership by a political subdivision, or a sale or donation of adjudicated property, as applicable, will be declared a nullity.
[[Image here]]
B. ...
(3) Within fifteen days after the rendering of the order under Paragraph (A)(1) of this Section, the party claiming costs shall submit proof of costs. Proof of costs may be made by affidavit or other competent evidence and may be contested by the party claiming the nullity. A contest of costs shall be filled within fifteen days after the filing of the proof of costs, and the contest shall be heard within forty-five days after the filing of the proof of costs.
(4) Within sixty days after the issuance of the order pursuant to Paragraph (A)(1) of this Section, the court shall render a judgment of nullity, and the judgment shall fix the costs allowed. This judgment shall be a final judgment subject to appeal.

. La. Const. Art. VII, § 25(C) states that:
No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of price and taxes paid from the date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of the sale.

. La. C.C. art. 6 provides that ''[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.”

. Upon remand, this Court reaffirmed its holding that the purchaser’s right of reimbursement was solely against the tax debtor as record owner. The matter was remanded for reconsideration in light of the Supreme Court’s holding in Smitko v. Gulf South Shrimp, Inc., 2011-2566 (La.7/2/12), 94 So.3d 750. Smitko held that the former property owner was not time-barred in his request to nullify a tax sale because the tax sale was an absolute nullity for lack of proper notice. The opinion noted that La. R.S. 47:2153C(1) which now gives the tax purchaser the right to seek reimbursement from the tax collector when the tax collector fails to give proper notice was not in effect at the time of the Brookewood Investments’ disputed tax sale. Hence, the Smitko decision did not change its opinion that Brookewood Investments’ right of reimbursement rested against the tax debt- or. Brookewood Investments Co., L.L.C. v. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C., 2012-1205 (La.App. 4th Cir. 5/15/13), 116 So.3d 899.