# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #063

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **9th day of December, 2014**, are as follows:

**BY JOHNSON, C.J.**:

2014-C -0109      MOORING TAX ASSET GROUP, L.L.C. v. RODERICK A. JAMES AND THE UNITED STATES DEPARTMENT OF TREASURY-INTERNAL REVENUE SERVICE (Parish of Orleans)

For the foregoing reasons, we hold that the lower courts erred in failing to award Mooring costs pursuant to La. Const. art. VII, §25(C) and ordering the immediate cancellation of the tax sale deed. We also hold it is Mr. James, the current owner of the property seeking to clear the tax sale deed from the title of the property, who is responsible for payment of these costs. Therefore, we reverse the rulings of the lower courts and remand the matter to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

VICTORY, J., concurs.

12/09/14

## SUPREME COURT OF LOUISIANA

## NO. 2014-C-0109

## MOORING TAX ASSET GROUP, L.L.C.

## VERSUS

## RODERICK A. JAMES AND THE UNITED STATES DEPARTMENT OF TREASURY-INTERNAL REVENUE SERVICE

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH CIRCUIT, PARISH OF ORLEANS

**JOHNSON, Chief Justice**

In this case, the tax sale of a property was declared absolutely null due to the failure of the taxing authority to issue sufficient pre-sale notice and advertisement of the tax sale. We granted this writ application to determine whether the lower courts erred in ordering cancellation of the tax sale deed without ordering the subsequent third party purchaser of the property to reimburse the taxes paid and costs incurred by the tax sale purchaser. In so doing, we must consider whether a tax sale purchaser is entitled to reimbursement of costs when a tax sale is declared absolutely null; and, if so, who is responsible for such reimbursement. For the reasons explained herein, we hold that the tax sale purchaser is entitled to reimbursement of its costs prior to cancellation of the tax sale deed. We also hold it is the current owner of the property who is responsible for payment of these costs. Thus, we reverse the rulings of the lower courts and remand the matter to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

This case arises out of the tax sale of residential property located at 7047 Lake Willow Drive in New Orleans, Louisiana. On September 22, 1997, Charles and Connie Brown purchased this property pursuant to a "Cash Sale of Property." The sale was recorded in the Orleans Parish Conveyance Records on September 27, 1997.

1

After the Browns became delinquent on their property taxes, the property was sold at a tax sale on November 8, 2004, to Mooring Tax Asset Group. The tax collector executed a tax deed that purportedly conveyed the property to Mooring on December 21, 2004. This deed was recorded in the Orleans Parish conveyance records on April 26, 2005.

Presumably unaware of the tax sale, the Browns sold the property to NARA, L.L.C. pursuant to a "Cash Sale" on April 17, 2007. The sale was recorded in the Orleans Parish Conveyance Records on April 23, 2007. NARA subsequently sold the property to Roderick A. James, the defendant in this suit, on June 9, 2008. This sale was recorded in the Orleans Parish Conveyance Records on June 18, 2008.

On May 21, 2010, Mooring filed a "Petition to Quiet Title," seeking to terminate Mr. James' interest in the property for failure to redeem the property from the 2004 tax deed recorded in April of 2005. On June 14, 2010, Mr. James filed exceptions and an answer to the petition, as well as a reconventional demand against the City of New Orleans, asserting that the tax sale should be nullified on several bases, including insufficient pre-sale notice and advertisement. Mr. James then filed a motion for summary judgment asserting these two bases for nullity.

The trial court granted Mr. James' motion, finding the 2004 tax sale and the 2004 tax deed were absolute nullities due to lack of sufficient pre-sale notice and for lack of sufficient pre-sale advertisement. Following the ruling, Mooring contended the declaration of nullity should be preliminary, rather than a final judgment, until it was paid costs that are allowed pursuant to La. R.S. 47:2291. Mr. James asserted this statute could not be applied retroactively to this case, and was only applicable to tax sales that occurred after January 1, 2009. However, because Louisiana Constitution article VII, § 25(C) allows for the delay of the effects of a tax sale nullification until certain costs are paid to the tax sale purchaser, the trial court issued a judgment

2

allowing Mooring to submit proof of costs and Mr. James to contest costs. Mooring filed an "Affidavit of Proof of Costs Pursuant to La. R.S. 47:2221(B)(3)" asserting total costs of $37,495.95 due Mooring pursuant to La. Const. art. VII, §25(C), which included taxes paid, interest and costs. Mr. James then submitted a "Motion to Contest Costs," contending Mooring had not made a true claim for costs, and even if it had, taxes, interest, costs and penalties are not recoverable by a tax sale purchaser when the tax sale is an absolute nullity. Alternatively, Mr. James asserted that if these taxes, costs and penalties are recoverable, they are not recoverable from a third-party purchaser who had no interest in the property at the time of the tax sale.

The trial court granted Mr. James' motion to contest costs, finding that because the tax sale and tax deed were absolute nullities, Mooring was not owed or entitled to be reimbursed for taxes, costs, interest, or penalties. The court ordered the cancellation of the 2004 tax sale deed, which gave immediate effect to the declaration of nullity. Mooring appealed.

The majority of the court of appeal affirmed.[1] The court first rejected Mooring's argument that the trial court erred when it failed to set an amount due pursuant to La. R.S. 47:2291. The court of appeal found that statute was part of a legislative overhaul of tax sale statutes that became effective on January 1, 2009, and these changes were substantive in nature and thus applied prospectively only. The court also held that La. Const. art. VII, §25(C) did not compel Mr. James, as a third-party purchaser, to reimburse Mooring before the annulment of the tax sale could be given effect. In so holding, the court distinguished its earlier decision in *Brookewood Investments Co. v. Sixty-Three Twenty-Four Chef Menteur Highway, LLC*, wherein it had held that the tax purchaser's right of redemption was solely against the tax

_____

[1] *Mooring Tax Asset Group, L.L.C. v. James*, 13-0607 (La. App. 4 Cir. 11/6/13), 129 So. 3d 653.

debtor *or record owner of the property*.[2] The court reasoned the facts in *Brookewood* are distinguishable and its holding did not require Mr. James, who was neither the record property owner nor the tax debtor at the time of the 2004 tax sale, to reimburse Mooring any costs. The court noted that in *Brookewood*, and cases cited therein, the record property owner's liability resulted only from his status as the tax debtor. The court explained that Mr. James' status as a subsequent purchaser and the current property owner does not meet the purpose of the statutes that delay the effect of an annulled tax sale until the tax debtor reimburses the tax purchaser all statutory expenditures owed, which "is to ensure that the tax debtor does not unjustly get the benefit of nullification, i.e. property ownership with a clear title, by avoiding his tax obligations."[3] The court explained:

> Mr. James was not the record owner of the property and had no obligation to pay taxes on the property at the time of the 2004 Tax Sale. Mr. James made no warranties to Mooring to induce it to purchase the property. He did not warrant the title to the property nor the return of the purchase price. Although Mooring suggests that Mr. James benefitted because it paid the property's outstanding tax liability, a tax sale, absent special legislation, is generally subject to the rule of caveat emptor where the purchaser assumes the risks of all legalities and irregularities in the proceedings.[4]

One judge concurred, finding that absent a showing of bad faith or knowledge of the tax sale, a third-party purchaser, such as Mr. James, has no liability to a tax sale purchaser for its costs and that the tax sale purchaser's claim for its costs is against the original property owner. Two members of the panel dissented, finding the trial court erred in issuing a final judgment of nullity, and ordering the cancellation of the 2004 tax sale deed from the conveyance records because La. Const. art. VII §25(C) provides that the judgment of nullity cannot be effective until the tax purchaser is

---

[2] 12-1205 (La. App. 4 Cir. 1/16/13), 108 So. 3d 329. (Emphasis added).

[3] *Mooring Tax Asset Group*, 129 So. 3d at 658.

[4] *Id.*

paid.

Mooring filed a writ application in this court, which we granted.[5]

## DISCUSSION

The sale of property for nonpayment of taxes is an action that affects a property right protected by the Fourteenth Amendment.[6] In *Mennonite Board of Missions v. Adams*, the United States Supreme Court held that a party possessing a substantial property interest that is significantly affected by a tax sale is entitled to notice reasonably calculated to apprise him of the pending tax sale.[7] Since *Mennonite*, we have consistently held that the failure to give this required notice is a violation of due process and the resulting tax sale is null and void in its entirety.[8] In this case, it is undisputed that the Browns did not receive constitutionally sufficient notice and thus the tax sale was properly declared absolutely null.

In addition to providing general authority for the sale of property to collect delinquent property taxes,[9] the Louisiana Constitution also provides for the annulment of a tax sale. Specifically, Article VII, §25(C) states:

> No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. **No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid,**

---

[5] *Mooring Tax Asset Group, L.L.C. v. James*, 14-0109 (La. 5/16/14), --- So. 3d ----.

[6] *Tietjen v. City of Shreveport*, 09-2116 (La. 5/11/10), 36 So. 3d 192, 195.

[7] 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed. 2d 180 (1983).

[8] *See*, *e.g.*, *Quantum Resources Management, LLC v. Pirate Lake Oil Corp.*, 12-1472 (La. 3/19/13), 112 So. 3d 209, 215; *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566 (La. 7/2/12), 94 So. 3d 750, 759; *Lewis v. Succession of Johnson*, 05-1192 (La. 4/4/06), 925 So. 2d 1172, 1177.

[9] La. Const. art. VII, §25.

5

**and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser;** however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale. (Emphasis added).

More specific to actions to annul tax sales is La. R.S. 47:2291, which provides in pertinent part:

> A. A nullity action shall be an ordinary proceeding governed by the Louisiana Code of Civil Procedure. **Upon conclusion of the action for nullity, the court shall either**:
>
> (1) **Issue a preliminary order that the tax sale**, an acquisition of full ownership by a political subdivision, or a sale or donation of adjudicated property, as applicable, **will be declared a nullity**. (Emphasis added).
>
> ***
>
> B. (3) **Within fifteen days after the rendering of the order under Paragraph (A)(1) of this Section, the party claiming costs shall submit proof of costs**. Proof of costs may be made by affidavit or other competent evidence and may be contested by the party claiming the nullity. A contest of costs shall be filed within fifteen days after the filing of the proof of costs, and the contest shall be heard within forty-five days after the filing of the proof of costs.
>
> (4) **Within sixty days after the issuance of the order pursuant to Paragraph (A)(1) of this Section, the court shall render a judgment of nullity, and the judgment shall fix the costs allowed**. This judgment shall be a final judgment subject to appeal. (Emphasis added).
>
> ***

Relying on both La. Const. art. VII, §25(C) and La. R.S. 47:2291, Mooring asserts the lower courts erred in giving immediate effect to the judgment of nullity and ordering cancellation of the tax deed prior to payments of the amount it is due. Mooring further maintains that it is Mr. James, the current owner of the property, who is responsible for payment. By contrast, Mr. James argues the lower courts correctly found that Article VII, §25(C) is not implicated when a tax sale is *absolutely* null, and thus there is no basis for any reimbursement to the tax sale purchaser. Mr. James also argues La. R.S. 47:2291 is not applicable because that statute was a substantive change in the law and part of the overhaul of the tax sale statutes that did not become effective until January 1, 2009, after the date of the tax sale at issue. Further, Mr.

6

James suggests that even if Mooring is allowed to recover its costs, he is not the responsible party because he was not the tax debtor or owner of the property at the time of the tax sale.

After reviewing the law, record, briefs and arguments of the parties, we conclude the lower courts erred in ordering immediate cancellation of the tax sale deed and finding Mooring was not entitled to recover its costs pursuant to La. Const. art. VII, §25(C). We further find that Mr. James, as the current owner of the property seeking to nullify the tax sale and clear his title to the property, is the party responsible for payment of these costs.

We need look no further than La. Const. art. VII, §25(C) to reach our decision. This constitutional provision specifically dictates that the judgment of nullity cannot be effective until the tax purchaser is reimbursed taxes, costs and interest. This court long ago recognized this constitutionally mandated payment of costs relative to a judgment of nullity in a matter involving an absolutely null tax sale. In *Westwego Canal & Terminal Co. v. Pitre*,[10] this court declared that a tax sale was null and void and ordered cancellation of the deed *upon the payment* of the tax purchaser's costs pursuant to the Article X, Section 11 of the 1921 Constitution of Louisiana.[11] Subsequently, in *Lewis v. Succession of Johnson*, this court considered whether providing notice to only one co-owner of a property deprived the other co-owners of due process.[12] In finding such notice deficient, we declared the tax sale null and void and also specifically stated:

> We annul the tax sale subject of course to La. Const. art VII, §25(C),

---

[10] 1 So. 2d 550 (La. 1941).

[11] *Id.* (Emphasis added). (Essentially identical to current Art. VII, §25(C), Art. X, §11 of the 1921 Louisiana Constitution provided that "no judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments, to be previously paid to the purchaser.")

[12] 925 So. 2d at 1173.

and its included provision: "no judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser," Gabriel Lewis.[13]

Mr. James cites our more recent decision in *Smitko v. Gulf South Shrimp, Inc.*,[14] to support his argument that La. Const. art. VII, §25(C) does not apply to absolute nullities. In *Smitko*, the trial court granted summary judgment that confirmed and quieted the title of a tax purchaser on the basis that the former property owner failed to file a separate action or reconventional demand to institute a proceeding to annul the tax sale within six months from the date of service of the petition and citation to quiet title as required by former La. R.S. 47:2228[15] or La. Const. art. VII, §25(C).[16] The court of appeal majority found that the property owner's answer, asserting lack of notice and that the tax sales were null and void, was insufficient to "institute proceedings to annul the tax sale[s]" as required by La. R.S. 47:2228 to prevent judgment in favor of the tax purchaser.[17] This court reversed, specifically finding that "the time limitation in La. R.S. 47:2228 [did not preclude the property owner] from seeking to annul tax sales that may have already been fatally defective for want of

---

[13] *Id.* at 1184 n. 9.

[14] *Smitko*, *supra* n. 8.

[15] Former La. R.S. 47:2228 provided, in pertinent part: "After the lapse of three years from the date of recording the tax deed in the conveyance records of the parish where such property is situated, the purchaser, his heirs or assigns, may institute suit by petition and citation as in ordinary actions against the former proprietor or proprietors of the property, in which petition must appear a description of the property, mention of the time and place of the sale and name of officer who made same, reference to page of record book and date of recording tax deed, notice that petitioner is owner of the said property by virtue of said tax sale, and notice that the title will be confirmed unless a proceeding to annul is instituted within six months from date of service of the petition and citation.... After the lapse of six months from the date of service of petition and citation, if no proceeding to annul the sale has been instituted, judgment shall be rendered quieting and confirming the title." This statute was repealed effective January 1, 2009 and its substance reproduced in La. R.S. 47:2266, effective January 1, 2009.

[16] The pertinent part of La. Const. art. VII, §25(C) provides: "No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale."

[17] *Smitko*, 94 So. 3d at 755.

due process."[18] We explained that "an absolute nullity is 'an act in a cause which the opposite party may treat as though it had not taken place, or which has absolutely no legal force or effect.'"[19] Thus, because the tax sales were of no legal force or effect, we held the reconventional demand to annul the tax sales for lack of due process was timely before the trial court.[20]

Although this court's ruling in *Smitko* did not specifically reference the six-month time limit set forth in La. Const. art. VII, §25(C), our holding is fairly read to stand for the proposition that if a tax sale is absolutely null because of a due process violation, there are no time limitations that can be applied to prevent a party from asserting an action for nullity. Mr. James would have us extend this ruling more broadly to hold that the reimbursement of costs provision in La. Const. art. VII, §25(C) cannot be applied in the case of an absolute nullity because not even the mandates of the Louisiana Constitution can apply to something that never existed. However, we decline to generalize our holding in *Smitko* so far as to hold that no constitutional mandate can be applied relative to an absolute nullity. In *Smitko*, application of either the constitutionally mandated six-month time limit or the six-month time limit set forth in former La. R.S. 47:2228 precluded the property owner from asserting an action to annul the tax sale that was fatally defective for want of due process. Thus, *Smitko* essentially recognized that an absolute nullity cannot be cured by prescription. However, in this case, application of the provision in Article VII, §25(C) which requires payment of the tax purchaser's costs before the judgment of nullity is given effect (i.e., before the tax sale deed is ordered cancelled) in no way prevents Mr. James from seeking to annul the tax sale or obtaining a judgment of

---

[18] *Id*. at 759.

[19] *Id*. (Internal citations omitted).

[20] *Id.*

9

nullity. The lower courts correctly held the 2004 tax sale was an absolute nullity and Mr. James is entitled to obtain a judgment recognizing the absolute nullity. Application of Article VII, §25(C) merely allows Mooring, as the tax purchaser, to be paid its costs in conjunction with the judgment of nullity. This is consistent with our Civil Code articles relative to absolute nullities. Article 2032 provides that an action for annulment of an absolutely null contract does not prescribe. And, notably, although Article 2033 states that an absolutely null contract is deemed never to have existed, the article also provides that the "parties must be restored to the situation that existed before the contract was made." Applying the payment provision in La. Const. art. VII, §25(C) to provide for reimbursement of Mooring's costs in conjunction with the judgment of nullity satisfies the principles underlying Articles 2032 and 2033. Thus, we find La. Const. art. VII, §25(C) fully applicable in this case and find the lower courts erred in ordering the immediate cancellation of the tax sale deed without also setting the amount of costs due to Mooring.[21]

We now turn to the issue of who is responsible to reimburse Mooring's costs. Mr. James argues recovery should be against the City of New Orleans because it is the party responsible for the constitutionally defective notice. Alternatively, Mr. James asserts the Browns should be held responsible as the original tax debtors who would otherwise receive a windfall at Mooring's expense. Mooring asserts Mr. James is the responsible party because he acquired any interest the Browns had in the property and he is the party seeking to clear the tax deed from his title.

Although La. Const. art. VII, §25(C) mandates payment of the tax purchaser's costs, it is silent regarding who is responsible for payment. We agree with Mooring's assertion that Mr. James is the responsible party. The record establishes that the

---

[21] Because we resolve this matter solely by application of La. Const. art. VII, §25(C), we pretermit the issue of whether La. R.S. 47:2291 should be retroactively applied in this case.

December 21, 2004, tax sale deed was filed and recorded in the notarial and conveyance records for the Parish of Orleans on April 26, 2005. Subsequently, on April 17, 2007, the Browns sold the property by cash sale to NARA, L.L.C. The sale conveyed the property to NARA "with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which they have or may have against all preceding owners and vendors." This sale was recorded in the conveyance office for New Orleans on April 23, 2007. The record further demonstrates that Mr. James purchased the property from NARA via cash sale on June 9, 2008. This sale likewise conveyed the property to Mr. James "with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which they have or may have against all preceding owners and vendors." It is clear that all rights and obligations the Browns had regarding the property were transferred to NARA with the sale of the property. This right included the right to redeem the property within three years following the recordation of the tax sale.[22] These same rights and obligations were transferred to Mr. James when he purchased the property from NARA. Although Mr. James purchased the property after the three-year redemption period had passed, had his purchase occurred prior to April 26, 2008, he would have been the party entitled and obligated to redeem the property in order to clear the title. While the time to redeem has expired, it remains the obligation of the property owner to clear the title. Thus, it was Mr. James who properly sought to annul the tax sale even though he was not the tax debtor or property owner at the time of the tax sale. As the current owner of the property who was subrogated to all rights and obligations of the former owners and tax debtors, we find it is equally incumbent on Mr. James to reimburse the tax purchaser's costs.

---

[22] *See* La. Const. art. VII, §25(B)(1): "The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption."

Our holding is further supported by the *in rem* nature of the obligation imposed by ad valorem real estate taxes. This court has long recognized that "taxes levied on real property are a charge laid exclusively upon the property assessed, and collectible only out of said property, and neither the owner of said property, nor any other property of his, is liable for said taxes."[23] Such taxes serve as a lien upon the specific piece of real estate.[24] Moreover, this court has held that collection of delinquent real estate taxes can only be collected by tax sale of the property, not a personal suit against the property owner.[25] Because immovable property taxes are exclusively a charge upon the property assessed and collectable only from tax sale of that property, it is clear that any obligation relative to those taxes did not follow the Browns once they sold the property. Thus, the obligation to clear the tax sale deed from the title to the property, which we now hold cannot be accomplished without paying the tax purchaser's costs, necessarily belongs to the current owner of the property.

We also note the sale of the property to Mr. James was subject to any recorded interests or legal encumbrances on the property that were not terminated before the sale. Persons are held to have constructive notice of the existence and contents of recorded instruments affecting immovable property.[26] Because the tax deed was properly recorded in the public records, Mr. James was effectively put on notice that

---

[23] *Louisiana Oil Refining Co. v. Louisiana Tax Commission, et al.*, 167 La. 605, 606, 120 So. 23 (La. 1929).

[24] *See* La. R.S. 47:1993(G), which provides in pertinent part: "From the day the roll is filed in the recorder's office, it shall act as a lien upon each specific piece of real estate thereon assessed, which shall be subject to a legal mortgage after the thirty-first day of December of the current year for the payment of the tax due on it…."

[25] *Fransen v. City of New Orleans*, 08-0076 (La. 7/1/08), 988 So. 2d 225, 240.

[26] *See Blevins v. Manufacturers Record Pub. Co.*, 105 So. 2d 392, 776-77 (La. 1958) (on rehearing); *McCurdy v. Bloom's Inc.*, 39,854 (La. App. 2 Cir. 6/29/05), 907 So. 2d 896, 899; *Voelkel v. Harrison*, 572 So. 2d 724, 726-27 (La. App. 4th Cir. 1990), *writ denied*, 575 So. 2d 391 (La. 1991).

there was an issue involving unresolved property taxes on the property. Mr. James purchased the property subject to the recorded tax sale. While this tax sale was properly annulled at Mr. James' urging, Mr. James is responsible for dealing with the consequences of the recorded tax sale. Mr. James is the party holding the rights and obligations relative to the property and it is Mr. James who desires to clear the tax deed from his title. Thus, we find it is also Mr. James who must reimburse Mooring for its costs pursuant to La. Const. art. VII, §25(C).

## CONCLUSION

For the foregoing reasons, we hold that the lower courts erred in failing to award Mooring costs pursuant to La. Const. art. VII, §25(C) and ordering the immediate cancellation of the tax sale deed. We also hold it is Mr. James, the current owner of the property seeking to clear the tax sale deed from the title of the property, who is responsible for payment of these costs. Therefore, we reverse the rulings of the lower courts and remand the matter to the trial court for further proceedings consistent with this opinion.

## DECREE

**REVERSED AND REMANDED.**