PITMAN, J.
Defendant/Appellant Stonecreek Builders, LLC, appeals the judgment of the trial court in favor of Plaintiff/Appellee Frank Spencer Robertson, which annulled both a tax adjudication deed pertaining to certain property owned by Plaintiff in Cad-do Parish from Plaintiff and a co-owner to the Parish of Caddo (“the Parish”) dated August 4, 2000, and a cash deed from the Parish to Defendant, dated December 10, 2010. For the following reasons, the judgment is affirmed in part, amended in part and remanded for further proceedings.

FACTS

In 1982, Plaintiff and Beulah Carter Gladney[1] bought some property described as Lot 23, North Colony Estates, Unit No. 1, Caddo Parish. The street address of the home is 6925 North Colony Drive, Shreveport, Louisiana. Plaintiff built a house on the property, moved in and filed for a homestead exemption, which he was granted. Without proper notice to Plaintiff, the Parish revoked his homestead exemption in 1999, and, in 2000, also without notice, adjudicated the property to itself for Plaintiffs alleged failure to pay 1999 property taxes.
In 2010, the Parish sold the property to Defendant, and Defendant began eviction proceedings against Plaintiff. Plaintiff filed this suit seeking nullification of the revocation of his homestead exemption, nullification of the 2000 adjudication to the Parish and nullification of the 2010 sale of the property to Defendant. In his petition, Plaintiff claimed that he never received notice of any of the pertinent actions taking place with regard to the homestead exemption revocation, the adjudication to the Parish or the sale to Defendant and, therefore, claimed that all of these actions were absolute nullities. He alleged that no ad valorem taxes were, or *853 should have been, due on his property for 1999.
With its answer, which simply denied the allegations of Plaintiffs petition, Defendant filed an exception of no right and no cause of action and an exception of nonjoinder of a party; however, it failed to name in its exception the party which had not been joined. The exception of no cause of action was overruled by the trial court. The trial court sustained the exception of nonjoinder of parties and ordered that the Parish be joined as a party defendant. A supplemental petition was filed naming the Parish as a defendant. Defendant and the Parish both filed answers. The Parish pled that it does not conduct tax sales of property; rather, they are conducted by the Caddo Parish Sheriffs Office as Ex-Officio Tax Collector.[2]
Defendant filed a motion for summary judgment asserting that Plaintiff was prohibited by La. Const. Art. 7, § 25(C), from obtaining an annulment of the 2000 adjudication because the time period for seeking that relief had long since passed. The Parish filed a similar motion for summary judgment. Both motions for summary judgment were denied.
On September 19, 2012, a bench trial was had and the following evidence was adduced.
Plaintiff testified that he and Ms. Carter Gladney bought the lot in the early 1980s and that it was just a vacant wooded lot. In 1985 or 1986, he built his house there by himself and applied for a homestead exemption. Ms. Carter Gladney never lived with him and she left some time in the 1980s. He eventually married someone else.
Plaintiff further testified, that, in 1999, he was arrested for DWI in Arkansas and spent three months there in jail. When he returned to his home, his mailbox had been knocked down, but he replaced it within two to three days. He stated that people destroying his mailbox was a continuing problem.
Plaintiff also testified that he is 70 years old and that he is a former mechanic.for the City of Shreveport. He injured his back, however, and is now disabled. He stated he waits on his porch for his mail to be delivered, which usually arrives between 10:30 a.m. ánd 1:00 p.m. He lives with his girlfriend of 13 years, and has lived at the house continually since it was built except for the times when he was “locked up” for DWI, which he admits has happened 5 times in the last 30 years.
Plaintiff stated that he discovered that the tax assessor had cancelled his homestead exemption when he went to apply for a loan. When he was asked what year that occurred,' he was unclear, first stating it was in 1989, then stating it was 1999, and then saying, “Yes, I think it was '99, Judge. I ain’t been right since this happened.” He further stated that he only found out that his property was transferred to the Parish in 2006.[3] He did not owe taxes when his homestead exemption was in effect. He set up a payment plan to attempt to pay the taxes he was said to owe, but he did not follow through with it because he did not have the money to do so and he was “locked up” again.
Plaintiff also testified that it was not until January 4, 2010, that he discovered Defendant was making a claim of owner *854 ship of his property after he found a notice of eviction on his door. He stated that he had never received any notice from the tax assessor that his homestead exemption was cancelled, no notice prior to 2004 that his property had been adjudicated to the Parish, and no notice in 2010 regarding unpaid taxes on the property or the sale to Defendant. He also stated that he never received any type of notice from Defendant and never saw any published notices in any newspaper regarding his property.
On cross-examination, Defendant’s attorney introduced several documents, including a certified letter from the Sheriff as Tax Collector for the Parish, which informed Plaintiff that, as of May 11, 2000, he owed $522.17 in taxes for the year 1999, and which notified him that, if the taxes were not paid within 20 days, the Sheriff would advertise and sell the property to satisfy the judgment against him. This letter was marked “Return to Sender” and “undeliverable as addressed, unable to forward.” Plaintiff testified that he had never seen or received that letter. He stated that he had received certified letters in the past and knew that he needed to sign to accept certified mail. He testified that he never saw any notices printed in the newspaper in June and July 2000 stating that he owed taxes. Further, he denied ever seeing a certified letter which had been returned and which had a tax deed attached to it. He never saw the cash sale of adjudicated property from the Parish to Defendant. He stated that he never received notice of the sale of his property for taxes. After he received the notice of eviction in 2010, he attempted to begin making payments for monies allegedly owed.
Plaintiffs girlfriend, Bertha Coollins, who has lived at the subject property since 2000, testified that Plaintiff never received any letters regarding homestead exemption, taxes or any other problems with ownership of the house. She stated that Plaintiff is diligent about his mail and knew where the deed to his house was located. In fact, when the eviction notice was placed on the door, Plaintiff was able to locate a copy of his deed from a drawer. She testified that, in 2000, at a time when Plaintiff was in jail, he asked her to go make a payment on some taxes.
Ruthie Jenkins, who is Plaintiffs sister, testified that Plaintiff had been living on the subject property continually since the 1980s. It was stipulated to by counsel that Robert Robertson, Plaintiffs brother, would also testify that Plaintiff had always lived at the subject property.
Robert Thomas, Director of Exemptions with the Caddo Parish Tax Assessor’s Office, testified that he managed homestead exemptions, which are for the first $75,000 of a property’s value and are given for properties that are owner occupied. He stated that it is the practice of the tax assessor to send out postcards on an annual basis to people who filed homestead exemptions. If a postcard is returned, he sends out a notice of cancellation to the property owners to inform them that they will need to come to the office and reaffirm that exemption if they are still occupying the property. He verified that he had been subpoenaed to bring in the records and correspondence pertaining to the filing of, and cancellation of, the homestead exemption on the subject property.
Exhibit P-5 is a copy of the front of two postcards addressed to Plaintiff (as the owner of Lots 23 and 24), which were marked as “1998 cards returned” with a post office stamp notation of “undeliverable” and a check mark in a box labeled “attempted, not known.” Mr. Thomas testified that he did not have a copy of the reverse side of the exhibit; therefore, it is unknown whether those cards were the *855 homestead exemptions for 1998. However, the front of the cards contain the words, “Importanb-Homestead Receipt-Do Not Destroy.” They also bear the notations, “Keep this as your 1998 Homestead Exe (sic) Receipt.” Exhibit P-6, is the front of another postcard mailed to Plaintiff, which was marked as returned and which, apparently, has the same box checked as “attempted, not known.” Exhibit P-7 is a copy of the back of 'that same postcard which informed Haintiff that his homestead exemption had been cancelled due to “returned” 1998 homestead receipt.
As Mr. Thomas was identifying the exhibits, Plaintiffs attorney noted,. “And looks like that was a postage issue with that one.” The trial court asked how it was sent out with “postage, insufficient” and Mr. Thomas replied, “I’m not sure.”[4]
Mr. Thomas identified other documents he had brought, including Exhibit P-8, which is a printout showing the years of exemption filed with the Caddo Parish Sheriffs Office. He testified that Plaintiffs printout showed a homestead exemption for the period 1988 through 1998, and 1999 was the year the exemption was cancelled. That printout showed the property was assessed for less than $75,000 during those years when the exemption was in place. He stated that, if the property is assessed at less than $75,000, no taxes are due. He also stated that homeowners pay taxes only on the amount of assessment over the $75,000 exemption, giving the example that, if Plaintiffs house had been worth $80,000, he would have paid taxes on $5,000, which would be approximately $1,000 per year, or less, because the millage rate would have been less at that time.
Thomas further stated that, after Plaintiffs homestead exemption was cancelled in 2000, the taxes due were $779. In 2011, which was the most recent tax year, the taxes due were $720.16. He testified that, other than the documents already introduced into evidence, there were no other documents informing Plaintiff that his homestead exemption had been cancelled. When questioned whether Plaintiff would have owed taxes if his homestead exemption had not been cancelled, he answered that there would not have been any taxes owed, although a fire fee service charge would have been assessed.[5]
On December 18, 2018, when the trial resumed, Defendant called Brian Walls, owner of Stonecreek Builders, who testi- *856 fíed that he acquired an interest in the subject' property in September 2010. He identified several exhibits as letters he had sent to anyone who might have had an interest in the subject property, including Plaintiff and Beaulah Robertson (sic), who were the owners on file when he purchased the property through the Parish. He also testified that he published a notification of the pending tax sale in the Shreveport Times on September 26,2010.
On cross-examination, Mr. Walls testified that he sent the notice to Ms. Carter Gladney at the same address as Plaintiff and assumed that she could be located there. He stated that he did not search any individual names in public records, but, instead, relied upon the information at the office of the Secretary of State. The defense rested and time was allowed for briefing of the case.
The trial court issued its opinion on May 28, 2015, finding that the Caddo Parish Tax Assessor,
[f]or reasons unknown and unknowable, and without actual notice to either Frank Spencer Robertson or Beaulah Carter Gladney, arbitrarily cancelled the homestead exemption that had been in effect as to this property for approximately fifteen years. This resulted in the property, without actual notice, being offered at tax sale, in 2000 for 1999 alleged taxes.
The trial court noted that Plaintiff never received any notice that taxes were allegedly due or that his property had been adjudicated to the Parish until the purchasers at the tax sale tacked a notice of eviction on his front door. It stated that the fact that the property was offered for sale by the Parish for alleged tax deficiencies and that the assessed value of the property never exceeded the value of the homestead exemption were easily discern-able from the public records. It also found that Defendant knew that Plaintiff was residing in the subject property, as evidenced by the fact that it was trying to evict him. It concluded that the adjudication to the Parish for imaginary taxes that were never owed was an absolute nullity.
The trial court further noted that an action for annulment of an absolute nullity does not prescribe. It addressed the issue of peremption (which it referred to as preemption), which is found in La. Const, Art. VII, § 25(A)(2), and which states that no sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. It found that this section is to be narrowly construed and is inapplicable to the factual situation in the case at bar. It stated that the tax assessor’s act in revoking the homestead exemption was in violation of a law protecting the public interest and, for that reason, was an absolute nullity-
In finding that a narrow construction of La. Const. Art. VII, § 25(A)(2), indicated that the section did not apply in this case, and the action for nullity was not perempt-ed since there were no taxes due and unpaid, the trial court stated:
[W]hat more suitable set of circumstances could there be than that of a man of limited financial ability and limited education, who acquired and improved raw property, building a house with his own hands and residing in it continually for three (3) decades into old age without interruption until served with an eviction notice founded upon an adjudication for taxes that were never owed.
[[Image here]]
In accordance with the analysis herein above, the Court is of the opinion that *857 the action for annullity (sic) is not preempted (sic), and that Petitioner is entitled to a Judgment annulling the adjudication deed bearing instrument number 1714511 in the Conveyance Records of Caddo Parish, in Book 3408 at Page 294.
The judgment was rendered in accordance with the trial court’s opinion in favor of Plaintiff and against Defendants, the Parish of Caddo and Stonecreek Builders, LLC, annulling in their entirety the adjudication deed of 2000 and the 2010 deed from the Parish to Defendant. Defendant appeals that judgment. The Parish has filed a brief, but clarifies that it is a party to this suit only because it held tax title to the property in the time period between the ownership of Plaintiff and Defendant. The Parish further states that it did not seek the tax adjudication of the property, nor is it responsible for the adequacy of the tax sale process; therefore, it takes no position in the appeal and stands ready to comply with the final judgment in this matter regardless of the result.

DISCUSSION

Validity of the adjudication of 2000 and the tax sale of 2010

Defendant argues that the revocation of the homestead exemption in 1999 and the adjudication to the Parish in 2000 were proper since the Caddo Parish Sheriff, in his capacity as Ex-Officio Tax Collector, properly notified the former owners, Plaintiff and Ms. Carter Gladney, of a 1999 tax delinquency, which resulted in the tax sale of 2000. The property was adjudicated to the Parish when no sufficient bids were received, and the property was not redeemed. In 2010, Defendant purchased the property directly from the Parish and lawfully notified all interested parties of the sale.
Defendant also argues that the tax debtors were duly notified of their tax delinquency and notes that, at the time the property was adjudicated in 2000, La. R.S. 47:2180 (which was repealed effective January 1, 2009) governed the notice requirements of tax sales and provided that the tax collector was required to send notice of a tax sale (1) to each taxpayer who had not paid the assessed taxes or (2) to the record owner of the property for which the taxes are delinquent.
Defendant further argues that notice of the 2000 tax sale was sent by certified mail to the record property owners at 6925 North Colony, Shreveport, Louisiana, but the notice was returned “Undeliverable as Addressed Unable to Forward.” The envelope bears a Return to Sender stamp by the post office; however, no slot is checked indicating why the letter was. undeliverable. Defendant, contends that actual notice of delinquency is not necessary.
Defendant also argues that La. R.S. 47:2180(B) provided additional steps to be taken in the event the mailed notice was returned “undelivered” or “unclaimed.” In that situation, the tax collector could comply with the Louisiana Constitution by advertising thé property in the advertising required for unknown owners. Part (B) of the statute also provides that, after completion of-service of notice by mail or by personal or domiciliary service, the tax collector “shall make out a proces verbal stating therein the names of delinquents so notified, their post office address, a brief description of the property, the amount of taxes due and how the service of notice was made.”' Part (C) requires the tax collector to publish a general notice addressed to all unknown owners once a week for two weeks in a newspaper published in the parish, or, if no paper is published, then such notice shall be given in the manner provided by law for judicial *858 sales. Defendant claims the proces verbal filed by the parish sheriff, as well as copies of the newspaper publications, show that proper notice of the impending tax sale appeared twice in the local newspaper in compliance with the law.
Defendant argues that tax sales are presumed valid, and that a tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
Defendant asserts that Plaintiffs argument that the 2000 property adjudication is null due to an alleged lack of notice of the cancellation- of the homestead exemption, or the lack of notice of the delinquency of the tax sale, is without merit. Plaintiff and the trial court incorrectly rely on La. Const. Art. VII, § 25, which states, “The fact that taxes’were paid on a part of the property sold prior to the sale thereof, or that a- part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid.” It argues that Plaintiffs only basis for nullity was to provide “proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale.” La. Const. Art. VII, § 26(C).
Defendant also argues that it purchased a full interest in the subject property from the Parish in 2010 pursuant to a “Cash Sale of Adjudicated Property.” It .sent notices of the proposed sale in accordance with law, duly advertised the sale in ,the Shreveport Times and, after the sale, filed an affidavit in accordance with the law, cancelling and terminating the rights of all parties identified in the affidavit, including Plaintiff. Because it complied with the' requirements of the statute dictating the steps to be taken when adjudicated property is sold by a political subdivision, Defendant contends that the 2010 cash sale to it was proper and should not have been annulled by the trial court.
Plaintiff responds and argues that Defendant failed to address the merits of the trial court’s ruling on the revocation of his homestead exemption and, instead, relied upon an exception of prescription it invoked by asserting La. Const. Art. VII, § 25(C). The right of homestead exemption is created in the same Louisiana Constitution, specifically Art. VII, § 20(A)(1), ajnd that right is further protected by statute, La, R.S. 47:1703.1, which provides in Paragraph (A), that the tax assessor for the Parish of Caddo (and others) shall provide a form to property owners within the parish for permanent registration for the benefits of the homestead exemption. Paragraph (B) of that statute provides that “a homestead exemption so claimed shall remain valid without necessity of renewal of the claim” as long as the claimant and property qualify for the exemption.
Plaintiff also argues that Mr. Thomas testified that the only reason Plaintiffs homestead exemption was cancelled was that Exhibit P-5, a notice the assessor sent out to test the continuing residency of homeowners, was returned in the mail. He claims that the assessor had neither a duty nor a right to test the continuing residency of a homeowner who filed the permanent registration provided for in the statute. He stated that Mr. Thomas testified that, if the cards were returned in the mail, the assessor then mailed the homeowner another postcard notifying the owner of the cancellation of the homestead exemption. In the case sub judice, the problem was compounded by the fact that the notice was sent back to the assessor with a notation of “postage due” on it; therefore, the assessor failed , to properly defray the postage needed to get the form to Plaintiff. For these reasons, he argues that revocation of his homestead exemp *859 tion was improper; and, had the homestead exemption never been cancelled, no taxes would have ever been due.
Plaintiff further argues that the tax assessor’s action in violation of La. R.S. 47:1703.1 implicated La. C.C. art. 7, which states that “[p]ersons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.” He asserts that the revocation of his homestead exemption by the tax assessor constituted a juridical act that was absolutely null.
Plaintiff also argues, and emphasizes in his brief, that the trial court properly addressed the issue of peremption found in La. Const. Art. VII, § 25(C), which prevents a tax debtor from attacking, after five years if no notice is given, the tax sale on grounds “that a part of the property was not subject to taxation.” Since the clause does not read “all or a part of the property was not subject to taxation,” he claims that the drafters did not intend for the five-year peremption to be invoked to preempt an attack on a tax sale when all of the property was not subject to taxation, as it was in this case.
Further, Plaintiff argues that he has been in corporeal possession of the property during the time period between the adjudication to the Parish and the tax sale to Defendant. He claims that La. Const. Article VII, § 25(C), peremption does not run so long as the tax debtor retains corporeal possession of the property transferred by tax sale or adjudication.
Plaintiff contends that the burden' of proof as to notice has changed during the time period at issue in this case. He claims that the failure of the tax collector to file a proces verbal to the mortgage records containing all- of the legally required information negates the presumption of the tax sale |lfideed’s validity and imposes on the person claiming rights under the deed the obligation of proving by clear and convincing evidence that the necessary notice was properly sent to the tax debtor. La. R.S. 47:2180.
Plaintiff argues that his co-owner, Ms. Carter Gladney, was never properly served the required notice of delinquency since it was allegedly sent only to the address on North Colony. Ms. Carter Gladney never resided at the subject property, but she had been served at an address in Shreveport when the partition suit was filed. Plaintiff contends that the 'tax collector’s failure to provide her with the notice required makes the adjudication to the Parish, and everything that followed, an absolute nullity.
Because the validity of the revocation of the homestead exemption is the threshold issue upon which the subsequent declarations of nullity of the 2000 adjudication to the Parish and the 2010 cash sale to Defendant were based, we will address that issue first.
The Louisiana Homestead Exemption is established in La. Const. Art. VII, § 20(A), as follows:
(1) The bona fide homestead, consisting of a tract of land or two or more tracts of land even if the land is classified and assessed at use value pursuant to Article VII, Section 18(C) of this constitution, with a residence on one tract and a field with or without timber on it, pasture, or garden on the other tract or tracts, not exceeding one hundred sixty acres, buildings and appurtenances, whether rural or urban, owned and occupied by any person or persons owning the property in indivisión, shall be exempt from state, parish, and special ad valorem taxes to the extent of seven thousand five hundred dollars of the assessed valuation. The same homestead exemption *860 shall also fully apply to the primary residence, including a mobile home, which serves as a bona fide home and which is owned and occupied by any person or persons owning the property in indivisión, regardless of whether the homeowner owns the land upon which the home or mobile home is sited; however, this homestead exemption shall not apply to the land upon which such primary residence is sited if the homeowner does not own the land.
La. R.S. 47:1703.1, entitled “[pjerma-nent registration of homestead exemption; designated parishes,” states in pertinent part as follows:
A. The tax assessor for the parishes of ... Caddo ... shall provide a form to property owners within the parish for permanent registration for the benefits of the homestead exemption provided for in R.S. 47:1703.
B. Such form shall contain a sworn statement that the homeowner currently owns and occupies the homestead and that he is not claiming any other property as his homestead for purposes of this exemption; and that if he is claiming such an exemption on other property, that he will notify the assessor of the parish where such other property is located within sixty days of his intent to cancel his claim for that homestead exemption. A homestead exemption so claimed shall remain valid without necessity of renewal of the claim as long as the claimant and property qualify for the exemption [.] (Emphasis added.)
In LaNasa v. City of New Orleans, 99-2989 (La.App. 4th Cir.8/27/03), 855 So.2d 404, writ denied, 03-2739 (La.12/19/03), 861 So.2d 578, the plaintiff was an elderly and incompetent woman who had failed to apply for benefits of the homestead exemption and failed to pay the ad valorem property taxes due on her property beginning in 1983. In 1988, according to the New Orleans Code Part II, Chapter 150, Section 49, the Tax Collector filed suit and had a lien placed on her property due to delinquent ad valorem taxes, penalties and interest. Her home was adjudicated to the Parish of Orleans for nonpayment of the taxes alleged to be due. LaNasa filed a petition to nullify adjudication and sought injunctive relief and alleged that the assessor improperly assessed property owned by her for the tax years 1983 through 1995 and that the City of New Orleans illegally issued a tax bill pursuant to the assessment and the years of unpaid taxes. The value of her home was less than $75,000. The trial court rendered judgment granting retroactive application of the homestead exemption in favor of the plaintiff and the annulment of the 1988 adjudication by the tax collector of the plaintiffs property to the City of New Orleans due to delinquent ad valorem taxes, penalties and interest from 1983 through 1988. The city appealed.
In affirming the judgment of the trial court, the appellate court stated that a homeowner is absolutely entitled to the homestead exemption as guaranteed by the Louisiana Constitution. Any local administrative rule or ordinance restricting the application must be strictly construed so as to prevent that local rule or ordinance from circumventing what has been constitutionally granted. It stated as follows:
In the instant case the evidence showed that LaNasa actually lived in the home during the years in question. Further, LaNasa’s son, David Paul LaNasa, testified at trial that his mother was incompetent and not capable of caring for herself. To that end he and his sister would collect LaNasa’s mail. He stated LaNasa never received mail regarding the homestead exemption. He further *861 testified that his mother is ignorant of the process of claiming the exemption because her husband always took care of it when they lived together, before La-Nasa took ownership of the house. The evidence also demonstrated that the certified letter the Assessor sent to LaNasa regarding the 1988 adjudication was returned “unclaimed”. Neither the City nor the Assessor presented evidence that LaNasa’ actually received any of the applications it sent regarding the homestead exemption.
The trial court had concluded that La-Nasa’s failure to fill out and return a postcard, which she was never proven to have actually received, should not preclude her from receiving the exemption retroactive to 1988. It also ordered LaNasa to pay the city’s expenses, assessments and taxes properly due after the exemption was applied, and the appellate court found no clear or manifest error in that ruling, considering the facts of the case.
It is well settled that a trial court’s findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The facts of the case at bar are very similar to those in LaNasa, supra. As in that case, Plaintiff in the instant case has lived continually in the home, which is worth less than $75,000, since the time he built it and applied for the homestead exemption. Plaintiff testified that he never received the notice of homestead exemption in 1998, and that fact was verified at trial by the testimony and records of Mr. Thomas, the person in charge of homestead exemptions in the Parish. The documents introduced into evidence at trial, which were provided by Mr. Thomas under subpoena, showed that the homestead exemption cards were sent to Plaintiff, but were returned as undeliverable. There were even notations on the front of Exhibit P-5 stating that postage was due on the cards. Mr. Thomas testified that the return of the cards automatically triggered a revocation of the homestead exemption, yet Plaintiff also never received notice of the revocation. Those cards were also returned to sender and marked as “attempted, not known.” Mr. Thomas testified that no taxes would have been due on Plaintiff’s property had the homestead exemption not been revoked.
The Caddo Parish Tax Assessor’s practice of canceling homestead exemptions when the postcards are returned in the mail is the type of “local administrative rule” addressed in LaNasa, supra. The application of such a local administrative rule must be strictly construed to prevent that local rule or ordinance from circumventing what has been constitutionally granted. For these reasons, we find that the revocation of Plaintiffs homestead exemption, which notice he never received, was improper. Therefore, we affirm that portion of the judgment of the trial court nullifying the revocation.

The adjudication to the Parish of Caddo

Because the revocation of the homestead exemption was an absolute nullity, Plaintiff also sued for the nullification of the adjudication to the Parish, not only on the basis that he had not been notified of the revocation, but also because he did not receive notification of the adjudication to the Parish in 2000.
In Tietjen v. City of Shreveport, 09-2116 (La.5/11/10), 36 So.3d 192, the Louisiana Supreme Court reversed the appellate court and affirmed the judgment of the trial court declaring a tax sale null and void based on lack of notice. It stated that *862 the sale of property for nonpayment of taxes is an action that affects a property right protected by the 14th Amendment. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). The Mennonite court recognized that the mortgagee has a legally protected property interest and is entitled to notice reasonably calculated to apprise the mortgagee of a pending tax sale. The Due Process Clause of the 14th Amendment to the United States Constitution requires that deprivation of property by adjudication be preceded by notice and opportunity to be heard appropriate to the nature of the case. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.
The Tietjen, supra, court also stated that factual determinations are subject to review for manifest error. In such a review, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact- finder’s conclusion was a reasonable one. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Further, where the findings are based on determinations regarding the credibility of witnesses; the manifest error standard demands great deference to the findings of fact. Rosell v. ESCO, supra. Indeed, where the fact finder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous.
Because the homestead exemption was improperly revoked, the taxes assessed against Plaintiff were not due. Plaintiff continually resided at his property, which was valued at less than $75,000. A review of the record reflects these facts; therefore, the adjudication to the Parish in the year 2000 was subject to the action for nullity. We note further that, even though the tax assessor attempted to follow the procedure set forth in the statutes for selling property for taxes, once again the evidence showed that Plaintiff did not receive the certified letter indicating his property would be sold for taxes due, and he did not see any notices in the newspaper. Therefore, he had no knowledge that his property had been adjudicated to the Parish. For these reasons, we find no manifest error in the trial court’s declaration of nullity of the adjudication of 2000 since no taxes should have been assessed to Plaintiff, and none were owing.
For the same reasons found in LaNasa, supra, that the improper revocation of the homestead exemption resulted in a finding that taxes assessed were not due, and, therefore, the adjudication to the Parish was absolutely null and was reversed, we find no manifest error in the trial court’s decision finding the adjudication to the Parish in this case absolutely null.
Since both the homestead exemption revocation and the adjudication to the Parish in 2000 have been deemed to be- nullities, so must be the 2010 cash sale from the Parish to Defendant. It should be noted that it was only because Defendant attempted to evict Plaintiff from his home that Plaintiff became aware there was a claim- on his property for failure to pay *863 taxes. Despite Defendant’s attempts to follow the procedure set forth in the law to purchase property from a political subdivision, the fact remains that no taxes were due, or had ever been due, on the property. Because no taxes were due, the adjudication was improper. Therefore, the 2010 cash sale from the Parish to Defendant is also a nullity. For these reasons, this assignment of error is without merit.
Defendant’s entitlement to return of the. taxes paid
Defendant argues that the trial court erred in rendering the judgment nullifying the adjudication and the cash sale and making the judgment permanent without first providing for reimbursement to it as the tax sale purchaser. It contends that, in annulling both deeds, the trial court failed to compel Plaintiff or the Parish to refund the purchase price it paid, the _]jgproperty taxes it pa,id since acquisition and the costs of the sale, together with interest as required by the Louisiana Constitution.
Defendant also argues that such liability rests with the current owner and cites Mooring Tax Asset Grp., L.L.C. v. James, 14-0109 (La.12/9/14), 156 So.3d 1143. It claims that, since no effort was made to reimburse it for the taxes and costs it has paid, no judgment annulling the tax sale shall have effect until this is done.
Plaintiff argues that some terminological housekeeping is in order. He claims that the 2010 event was not a “tax sale” and Defendant is not a “tax sale purchaser.” He characterizes the 2010 sale as a cash sale from the Parish to Defendant in which the Parish putatively sold whatever rights it might have had in the property to Defendant. To that end, he contends that, as between the Parish and Defendant, the normal rules of warranty against eviction apply to the sale, and Defendant’s remedy lies not in recovering taxes not due from him, but in pursuing a warranty of eviction claim against the Parish and/or a right of legal subrogation to recover from the Sheriff.
Plaintiff also argues that,' if no taxes were due, the sale could not be deemed a tax sale; and, if a sale mistakenly takes place, such a sale is considered null and void. He contends that the property owner whose property is exempt from taxation is not bound by the constitutional rule to first pay the taxes and interest before recovering the property, citing Bostwick v. New Hope Baptist Church, 111 So.2d 201 (La.App. 2d Cir.1959), and Faust v. Mitchell Energy Corp., 437 So.2d 339 (La.App. 2d Cir.1983).
La. Const. Ann. Art. VII § 25(C) states:
No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser [.]
La. R.S. 47:2291, effective January 1, 2009, prior to the tax sale from the Parish to Defendant, provides the procedure to be followed in nullity actions and states as follows:
A. A nullity action shall be an ordinary proceeding governed by the Louisiana Code of Civil Procedure. Upon conclusion of the action for nullity, the court shall either:
(1) Issue a-preliminary order that the tax sale, an acquisition of full ownership by a political subdivision, or a sale or donation of adjudicated property, as applicable, will be declared a nullity....
(2) Render judgment dismissing the action with prejudice which shall be a final judgment for purposes of appeal.
*864 B. (1) The tax sale purchaser, the political subdivision, or the purchaser or do-nee from a political subdivision shall be presumed to be a good faith possessor of the property.
(2) Costs pursuant to Article VII, Section 25 of the Louisiana Constitution and R.S. 47:2290 shall include costs of sending notice, costs of publication, and costs of determining tax sale parties. Costs shall also .include amounts set forth in Civil Code Articles 496 and 497, if applicable.
(3) Within fifteen days after the rendering of the order under Paragraph (A)(1) of this Section, the party claiming costs shall submit proof of costs. Proof of costs may be made by affidavit or other competent evidence and may be contested by the party claiming the nullity. A contest of costs shall be filed within fifteen days after the filing of the proof of costs, and the contest shall be heard within forty-five days after the filing of the proof of costs.
(4) Within sixty days after the issuance of the order pursuant to Paragraph (A)(1) of this Section, the court shall render a judgment of nullity, and the | ^judgment shall fix the costs allowed. This judgment shall be a final judgment subject to appeal.
C. After a judgment under Subsection B of this Section has been rendered, the governmental liens, other than statutory impositions paid if the nullity has been rendered’on the basis df prior payment, and costs, shall be paid within one year from the date of the judgment. This one-year period shall be suspended while an appeal is pending. If the payment is not made within the period allowed, the judgment of nullity shall be vacated and the case dismissed with prejudice at the request of the person against whom the judgment of nullity was rendered.
D.After payment has been made, the party in whose favor judgment has been rendered may apply for an ex parte order stating that the required payments have been made. The application shall be verified and shall state, or an affidavit accompanying the application shall state, the amount and method of payment, that the payment was made to the party against whom the judgment has been rendered, and that a request for dismissal under Subsection C of this Section has not been filed.
In Mooring, supra, the tax sale of a property was declared absolutely null due to the failure of the taxing authority to issue sufficient presale notice and advertisement of the tax sale. In that case, the property was originally owned by a couple named Brown who bought it in 1997. They became delinquent on their property taxes and the property was sold at a tax sale in November 2004 to Mooring Tax Asset Group. A tax deed was executed and filed in the conveyance records in April 2005. Presumably unaware of the tax sale, the Browns sold the property to NARA, L.L.C., pursuant to a cash sale in April 2007, and that sale was recorded, NARA subsequently sold the property to Mr. James in June 2008, and the sale was recorded in the public records. In May 2010, Mooring filed a petition to quiet title and sought to terminate Mr. James’s interest in the property for failure to redeem it from the 2004 tax deed recorded in April 2005. The trial court declared the tax sale absolutely null due to the failure of the taxing authority to issue sufficient pre-sale notice and advertisement of the tax sale, but failed to order the third-party purchaser of the property to reimburse the taxes paid and costs incurred by the tax *865 sale purchaser prior to cancellation of the tax sale deed.
The Louisiana Supreme Court granted writs to determine whether the lower courts erred in ordering cancellation of the tax sale deed without ordering the reimbursement of the taxes paid and costs incurred by the tax sale purchaser. In so doing, it had to consider whether a tax sale purchaser is entitled to reimbursement of costs when a tax sale is declared absolutely null, and, if so, who is responsible for such reimbursement.
The Mooring, supra, court held that the tax sale purchaser was entitled to reimbursement of its costs prior to cancellation of the tax sale deed. It also held that the current owner of the property, Mr. James, was responsible for payment of these costs.
In making this finding the supreme court stated:
We need look no further than La. Const, art. VII, § 25(C) to reach our decision. This constitutional provision specifically dictates that the judgment of nullity cannot be effective until the tax purchaser is reimbursed taxes, costs and interest. This court long ago recognized this constitutionally mandated payment of costs relative to a judgment of nullity in a matter involving an absolutely null tax sale. In Westwego Canal & Terminal Co. v. Pitre, [197 La. 374, 1 So.2d 550 (1941)] this court declared that a tax sale was null and void and ordered cancellation of the deed upon the payment of the tax purchaser’s costs pursuant to the Article X, Section 11 of the 1921 Constitution of Louisiana.
* * *
The lower courts correctly held the 2004 tax sale was an absolute nullity and Mr. James is entitled to obtain a judgment recognizing the absolute nullity. Application of Article VII, § 25(C) merely allows Mooring, as the tax purchaser, to be paid its costs in conjunction with the judgment of nullity. This is consistent with our Civil Code articles relative to absolute nullities. Article 2032 provides that an action for annulment of an absolutely null contract does not prescribe. And, notably, although Article 2033 states that an absolutely null contract is deemed never to have existed, the article also provides that the “parties must be restored to the situation that existed before the contract was made.” Applying the payment provision in La. Const, art. VII, § 25(C) to provide for reimbursement of Mooring’s costs in conjunction with the judgment of nullity satisfies the principles underlying Articles 2032 and 2033. Thus, we find La. Const, art. VII, § 25(C) fully applicable in this case and find the lower courts erred in ordering the immediate cancellation of the tax sale deed without also setting the amount of costs due to Mooring.
The court was'then faced with the issue of who should be réquired to pay the costs prior to cancellation of the tax deed. Mr. James argued that the City of New Orleans should pay because it was the party responsible for the constitutionally defective notice. The supreme court disagreed with this argument and found that the current owner of the real property that had been sold at a tax sale was responsible for reimbursing the taxes and costs paid by the tax sale purchaser before the judgment annulling the tax sale could become effectivé, even though the current owner had no interest in the property at the time of the tax sale. The court opined that the current owner was the party seeking to clear the title to the property, the current owner had acquired any interest the taxpayers had in the property, including the right of redemption and the obligation to *866 reimburse a tax sale purchaser, and the current owner had constructive notice of the tax deed which had been recorded. Persons are held to have constructive notice of the existence and contents of recorded instruments affecting immovable property. Thus, the supreme court reversed and remanded the matter to the trial court for further proceedings.
In applying La. Const. Art. VII, § 25(C), and La. R.S. 47:2291 to the facts and particular circumstances of the case sub judi-ce, we note that Defendant’s assignment of error has merit. It has certainly incurred monetary loss as a result of the nullification of the sale of 2010, and the law provides that no judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser.
Despite the recognition that those particular laws apply to the factual situation found in the case at bar, we note that Mooring, supra, can be distinguished. In that case, although the tax sale was deemed a nullity because of a technical flaw in the notice and advertisement pre-sale, the original owners, the Browns, actually were delinquent in paying their taxes. Thus, their descendent in title, Mr. James, was required to reimburse the tax sale purchaser for the costs associated with the sale. In the case at bar, Plaintiffs sale was annulled because it was found that the Parish incorrectly revoked his homestead exemption through several egregious errors; and, in fact, had the errors not been made, no taxes would have been due. Plaintiff had to file suit to annul the transactions and to quiet his title.
The issue of Defendant’s reimbursement was not addressed in the trial court. Therefore, it must be addressed prior to the judgment annulling the adjudication and cash sale becoming final. For that reason, Defendant’s assignment of error has merit, and we amend the judgment to recognize Defendant’s rights under La. Const. Art. VII, § 25(C), and remand this matter for a determination of who should be responsible to this particular tax sale purchaser for its monetary losses.

CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of plaintiff, Frank Spencer Robertson, and against Defendant Stonecreek Builders, LLC, and the Parish of Caddo, annulling the revocation of the homestead exemption and nullifying the 2000 adjudication and the 2010 cash sale, is affirmed. However, in accordance with La. Const. Art. VII, § 26(C), and La. R.S. 47:2291, the judgment is amended to reflect that it is a preliminary judgment pending the remand for further proceedings regarding the matter of reimbursement to Defendant Stonecreek Builders, LLC. Costs are assessed to Defendant Stonecreek Builders, LLC.
AFFIRMED IN PART, AMENDED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

. Beulah Carter Gladney never lived at the property. It was a vacant lot when she and Plaintiff purchased it; and, by the time Plaintiff built the house in 1986, he and Ms. Carter Gladney were no longer together. She has not been named as a party to this action. The record reflects that Ms. Carter Gladney left Shreveport in 1985 and has never returned. In 1990, Plaintiff filed a partition suit against her which resulted in a judgment of partition ordering a sheriffs sale of the subject property; however, the property was never sold at public auction. Despite the assertion that Ms. Carter Gladney left Shreveport in 1985, Plaintiff stated in a memo that the partition suit reflects that she was served at 2818 James Street in Shreveport.

. The Caddo Parish Sheriff’s Office as Ex-Officio Tax Collector was never added as a party to the suit.

. Plaintiff testified first that he found out about the adjudication to the Parish in 2006, then as his testimony progressed, the attorney asked about his knowledge of 2004, Therefore, this date is not very clear.

. The photocopy of the postcard is not clear. However, there is discussion in the record concerning the postage due, or whether any postage was due at all. Mr. Thomas did not bring original records with him, i.e., the returned homestead exemption card. Instead, he brought some blurry copies of the originals. The trial court admitted the photocopies into evidence. There was some confusion regarding which exhibit was being discussed, since the trial court pointed out that Exhibit P-5 had a stamp that said, "Postage Due” with a double line beside that notation. The amount of $.20 was written on the top line, but nothing was written on the lower line that was on the same line as the line "Postage Due.” The trial court stated that the arguments concerning the exhibits would go to the weight he decided to give them.

. Plaintiff rested his case and Defendant moved for an involuntary dismissal of the case on the basis that Plaintiff bore the burden of proving that the tax sale procedure and process were not valid and were not properly followed. The trial was stayed to afford Plaintiff an opportunity to challenge the revocation of his homestead exemption through the appropriate taxing agencies, including the Louisiana Tax Commission, in an effort to determine the correctness of the 1999 assessment of ad valorem taxes on the property. The appropriate taxing entity determined that Plaintiff’s challenge of the 1999 assessment was out of time.